**HYUNDAI MOTOR COMPANY, Hyundai Motor America, Inc., and Port City Pontiac–GMC Trucks, Inc. d/b/a Harbor Hyundai, Petitioners,**

v.

**Rowena RODRIGUEZ, by and through her next friend, Andrea RODRIGUEZ, Respondent.**

No. 97–0648.

Supreme Court of Texas.

Argued Nov. 18, 1998.

Decided June 10, 1999.

Ray A. Weed, Ruth G. Malinas, San Antonio, Jose E. Garcia, McAllen, William Powers, Jr., Austin, Thad D. Spalding, David M. Prichard, San Antonio, for petitioners.

David O. Gonzalez, Alice, Ramon Garcia, Edinburg, Baldemar Gutierrez, Alice, Maria Teresa Coronado, Edinburg, for respondent.

Justice HECHT delivered the opinion of the Court.

The sole question here before us is this: when claims for breach of an implied warranty and strict liability are both predicated on the dangerousness of a product's design, must the trial court ask the jury to make essentially the same factual determination separately for each legal theory? A divided court of appeals answered in the affirmative.[1] We disagree.

## I

Rowena Rodriguez, then twenty-seven years old, suffered severe injuries when the 1988 Hyundai Excel–GL in which she was riding went out of control and rolled over. Rodriguez sued the vehicle manufacturers, Hyundai Motor Company and Hyundai Motor America, Inc., and the seller, Port City Pontiac–GMC Trucks, Inc., d/b/a Harbor Hyundai (collectively, "Hyundai"), alleging that the vehicle was not crashworthy because its roof structure and padding and its passenger restraint system were defectively designed so that she was thrown into the roof in the accident and injured more seriously than she would have been otherwise. Rodriguez claimed $20 million actual damages based on three legal theories: negligence; strict products liability, including design and marketing defects; and breach of implied warranty. All three theories were predicated on the same complaints, both in the pleadings and the evidence at trial: that defects in the roof and in the restraint system made the vehicle unreasonably dangerous. Hyundai contended at trial that Rodriguez's injuries were caused not by her impact against the roof of the vehicle but by her ejection from the vehicle due to her failure to wear her seat belt, or else by the negligence of the driver, Cruz.

The district court's charge to the jury contained only two questions concerning liability. One inquired whether any negligence of Hyundai, Rodriguez, or Cruz, was a proximate cause of Rodriguez's injuries. The jury found that only Rodriguez and Cruz negligently caused the accident, apparently crediting Hyundai's evidence that Rodriguez was injured when she was thrown outside the vehicle because she was not wearing her seat belt. (Rodriguez did not object at trial or on appeal to the

---

1. 944 S.W.2d 757.

admission of evidence that she was not wearing a seatbelt at the time of the accident. The issue is not before us on appeal, and we therefore express no opinion on it.) The other liability question and instruction inquired about a design defect, as follows:

> Was there a design defect in the 1988 Hyundai Excel at the time it left the possession of Hyundai Motor Company that was a producing cause of the injury in question?

> A "design defect" is a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use.

The jury answered "no". The district court refused to include in the charge questions concerning a marketing defect or a breach of implied warranty. Specifically, as pertaining to the issue now before us, the district court refused to submit the following question and instruction concerning breach of implied warranty requested by Rodriguez:

> Was the automobile supplied by [Hyundai] unfit for the ordinary purposes for which such automobiles are used because of a defect, and, if so, was such unfit condition a proximate cause of the injury in question?

> A defect means a condition of the goods that renders it unfit for the ordinary purposes for which it is used because of a lack of something necessary for adequacy.

The jury having failed to find Hyundai liable, the district court rendered judgment that Rodriguez take nothing.

Rodriguez appealed on several grounds, among them that the district court erred in refusing to include a jury question and instruction on her breach-of-warranty claim. Rejecting all Rodriguez's other arguments, the court of appeals accepted this one, reasoning that because "defect" is defined differently for products-liability and breach-of-implied-warranty causes of action, the district court was required to submit both matters to the jury and was not permitted "to combine independent grounds of recovery into a single question." [2] Consequently, the court reversed the judgment for Hyundai and remanded the case for trial on Rodriguez's breach-of-implied-warranty claim. Chief Justice Seerden dissented, concluding that "the jury's rejection of a strict liability design defect theory conclusively negated the elements necessary for Rodriguez to recover under her alternate theory of implied warranty of merchantability." [3] The dissent argued that if the only defect alleged under either theory involves the dangerousness of the product, as in a crashworthiness case, the determination of "defect" for strict liability purposes also resolves the issue of "defect" for implied warranty purposes.[4] Noting that liability for breach of implied warranty requires a finding of proximate cause ("but for" causation and foreseeability) while liability for a design defect requires a finding of producing cause ("but for" causation only), the dissent reasoned that if the jury failed to find that any defect in the vehicle was a producing cause of Rodriguez's injuries, it could not have found that the same alleged defect proximately caused her injuries.[5]

Only Hyundai appealed to this Court. We granted Hyundai's application for writ of error to consider whether the district court erred in refusing to include Rodriguez's breach-of-implied-warranty question and instruction in the jury charge.[6]

## II

A trial court must submit in its charge to the jury all questions, instructions, and definitions raised by the pleadings and evidence.[7] When feasible, jury

---

2. 944 S.W.2d at 771.

3. 944 S.W.2d at 774 (Seerden, C.J., dissenting).

4. *Id* at 775.

5. *Id.*

6. Tex. Sup.Ct. J. 500 (Mar. 13, 1998).

7. Tex.R. Civ. P. 278 ("The court shall submit the questions, instructions and definitions in the form provided by Rule 277, which are

questions should be in broad form, accompanied by appropriate instructions and definitions.[8] A single question may relate to multiple legal theories. For example, in *Texas Department of Human Services v. E.B.*, we held that a finding of grounds for termination of parental rights could be used to support one of two legal bases for termination.[9] And in *American National Petroleum Co. v. Transcontinental Gas Pipe Line Corp.*, we held that a damages finding on a contract claim would support recovery on a tort claim where the measure of damages was the same for either claim.[10] Indeed, submission of a single question relating to multiple theories may be necessary to avoid the risk that the jury will become confused and answer questions inconsistently.[11] The goal of the charge is to submit to the jury the issues for decision logically, simply, clearly, fairly, correctly, and completely. Toward that end, the trial judge is accorded broad discretion so long as the charge is legally correct.[12]

 Liability for personal injuries caused by a product's defective design can be imposed under several legal theories, among them negligence, breach of warranty, and strict products liability.[13] The requisite proof for recovery on a design defect claim was prescribed by statute in 1993 and made the same for any legal theory asserted.[14] But before enactment of that statute, when the case before us was tried,

raised by the written pleadings and the evidence."); *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 718 (Tex.1995) ("If an issue is properly pleaded and is supported by some evidence, a litigant is entitled to have controlling questions submitted to the jury."); *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992) ("[Rule 278] provides a substantive, non-discretionary directive to trial courts requiring them to submit requested questions to the jury if the pleadings and any evidence support them."); *see Exxon Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex.1992) (per curiam).

8. Tex.R. Civ. P. 277 ("In all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions. The court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict."); *Westgate, Ltd. v. State*, 843 S.W.2d 448, 455 n. 6 (Tex.1992) ("Although we adhere to the principles of broad-form submission, [Rule] 277 is not absolute; it mandates broad-form submission 'whenever feasible.' Submitting alternative liability standards when the governing law is unsettled might very well be a situation where broad-form submission is not feasible.") (citation omitted).

9. 802 S.W.2d 647, 649 (Tex.1990).

10. 798 S.W.2d 274, 278 (Tex.1990).

11. *See Holmes v. J.C. Penney Co.*, 382 S.W.2d 472, 473 (Tex.1964) ("[T]he submission of duplicitous issues raising the same fact question, whether identical in language or merely in similar form, is erroneous."); *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 255 (Tex.1974) (criticizing the trial court's submission of both a general negligence issue based on res ipsa proof and a second negligence question based on proof of specific negligent acts, stating, "[w]e disapprove the practice of submitting the same issue in two different ways").

12. *See E.B.*, 802 S.W.2d at 649.

13. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 423 (Tex.1984); *see* William Powers, Jr., Texas Products Liability Law § 1.02, at 1–1 to 1–2 (2d ed.1994).

14. Section 82.005 of the Texas Civil Practice and Remedies Code sets out the proof necessary for recovery in all "products liability action[s] in which a claimant alleges a design defect". Section 82.001(2) defines a "[p]roducts liability action" as

any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

Tex. Civ. Prac. & Rem.Code §§ 82.001(2). *See also* Texas Pattern Jury Charges—Malpractice, Premises & Products PJC 71.4B (1997); Restatement (Third) of Torts: Products Liability § 2 cmt. n, at 40 (Proposed Final Draft, 1997) ("This Restatement contemplates that a well-coordinated body of law governing liability for harm to persons or property arising out of the sale of defective products requires a consistent definition of defect, and that the definition properly should come from tort law, whether the claim carries a tort label or one of implied warranty of merchantability.").

"design defect" was defined differently for different legal theories. In *Plas–Tex, Inc. v. U.S. Steel Corp.*,[15] we explained the difference in the meaning of "defect" in a strict-liability action and an action under Texas Business & Commerce Code § 2.314(b)(3)[16] for breach of implied warranty of merchantability.[17] For strict liability, "defect" means "a condition of the product that renders it unreasonably dangerous."[18] For breach of implied warranty, a product is defective if it is "unfit for the ordinary purposes for which [it is] used because of a lack of something necessary for adequacy."[19]

The difference in the two concepts of "defect" is critical in circumstances like those presented in *Plas–Tex.* There the plaintiff alleged that polyester resins purchased for use in manufacturing fiberglass swimming pools caused the pools to delaminate. Asserting a breach of the implied warranty of merchantability, plaintiff sought to prove only that the resins were not fit for the ordinary purposes for which they were used; plaintiff did not contend—and could not successfully do so—that the resins or the resulting delamination made the swimming pools unreasonably dangerous. In *Plas–Tex*, plaintiff could recover on a breach-of-warranty claim but not on a strict-liability claim.

■ But in a crashworthiness case involving a claim for personal injuries, like the one now before us, strict-liability's and breach-of-warranty's concepts of "defect" are functionally identical. The claim in a crashworthiness case is that a defect in the vehicle caused an occupant to sustain injuries in an accident that he or she would not otherwise have suffered. A defect in a vehicle that makes it uncrashworthy and thus causes occupants to be exposed to an unreasonable risk of harm in the event of an accident is *both* "unfit for the ordinary purposes for which [it is] used because of a

lack of something necessary for adequacy" *and* unreasonably dangerous. An uncrashworthy vehicle cannot be unfit for ordinary use but not unreasonably dangerous, nor can it be unreasonably dangerous but fit for ordinary use; it must be both or neither.

■ The congruence in crashworthiness cases of the two concepts of defect for strict-liability and breach-of-implied-warranty claims is illustrated in the case before us. Rodriguez's strict-liability and implied-warranty actions (as well as her negligence claim, although it does not concern us) stem from a single complaint—that the 1988 Hyundai Excel GT did not adequately protect her in a rollover because of design defects in the roof and restraint system. Neither in her pleadings, nor in the evidence at trial, did Rodriguez claim that some defects related only to her strict-liability claim and some only to her breach-of-implied-warranty claim. In this Court, Rodriguez has identified no evidence offered to prove a breach of implied warranty that did not also support her claim of strict liability.

■ Because the controlling issues regarding the existence of a defect for strict liability and breach of implied warranty were functionally identical in this case, we hold that the district court was not required to submit Rodriguez's requested question and instruction. Rather, to avoid confusing the jury and the possibility of inconsistent findings, the district court properly refused the requested question and instruction. This is true even though the language of the refused question and instruction was different than that of the question and instruction submitted. While trial courts should obtain fact findings on all theories pleaded and supported by evidence, a trial court is not required to, and

15. 772 S.W.2d 442(Tex.1989).

16. Tex. Bus. & Com.Code Ann. § 2.314(b)(3) (providing that, to be merchantable, goods must be "fit for the ordinary purposes for which such goods are used").

17. *Plas–Tex,* 772 S.W.2d at 444.

18. *Id.*

19. *Id.*

should not, confuse the jury by submitting differently worded questions that call for the same factual finding.

Other courts in similar cases have likewise concluded that whether a defect exists for breach of an implied warranty of merchantability and for strict liability involves an identical factual determination.[20]

A number of jurisdictions have encountered the irreconcilable verdicts that often arise from this type of dual submission.[21] A number of jurisdictions, anticipating such a problem, have approved a trial court's refusal to submit a warranty question in similar circumstances.[22] The *Restatement (Third) of Torts: Products Lia-*

**20.** *See, e.g., Foster v. Ford Motor Co.*, 621 F.2d 715, 719 (5th Cir.1980) (applying Texas law) ("The negative implication of the warranty requirement that goods be 'fit for the ordinary purposes for which such goods are used' is that the goods not be unreasonably dangerous."); *Chestnut v. Ford Motor Co.*, 445 F.2d 967, 969 (4th Cir.1971) (applying Va. law) (holding that the safety standard is the same under negligence, breach of warranty, and strict liability theories); *Basko v. Sterling Drug, Inc.*, 416 F.2d 417, 427 (2d Cir.1969) (applying Conn. law) ("[T]he 'defect' necessary for the imposition of strict liability is the equivalent of an implied warranty of merchantability."); *Wood v. General Motors Corp.*, 673 F.Supp. 1108, 1119 (D.Mass.1987) ("A claim for the breach of implied warranty of merchantability focuses on whether the defect renders the product unreasonably dangerous and therefore unfit for its ordinary use or purpose."); *cf. City of Greenville v. W.R. Grace & Co.*, 827 F.2d 975, 978 (4th Cir.1987) (applying S.C. law) ("[I]n order to prevail on a negligence or breach of warranty theory, a plaintiff must prove that 'the product, as designed, was in a defective condition unreasonably dangerous to the user....'"); *Morgen Indus., Inc. v. Vaughan*, 252 Va. 60, 471 S.E.2d 489, 492 (1996) ("In order to recover under either a negligence or a breach of implied warranty theory [in a products liability case] ... a plaintiff must show ... that the goods were unreasonably dangerous"). *But see Brewer v. Jeep Corp.*, 724 F.2d 653, 656 (8th Cir.1983) (applying Ark. law) ("Arkansas requires an additional element, over and above the defect necessary for a warranty action, to be demonstrated ... in strict liability[: unreasonable dangerousness.]"); *Zacher v. Budd Co.*, 396 N.W.2d 122, 140 (S.D.1986) (" '[F]itness for ordinary purposes,' appears to set a lower liability threshold that is more beneficial to a plaintiff. It also appears easier for a jury to understand and apply.").

**21.** *See, e.g., Costilla v. Aluminum Co. of Am.*, 835 F.2d 578, 579 (5th Cir.1988) (applying Texas law) (holding that "a double submission was unwarranted" when the jury found a twist-off bottle cap was not unreasonably dangerous, because "the determination of defect for purposes of dangerousness for § 402A lia-

bility often resolves the issue of defect for unmerchantability liability"); *Gumbs v. International Harvester, Inc.*, 718 F.2d 88, 95 (3rd Cir.1983) (applying Virgin Islands law) (concluding that the jury's findings were irreconcilably inconsistent, because the requisites for strict liability and breach of implied warranty of merchantability were, under the facts of that case, coextensive); *Bowler v. Stewart–Warner Corp.*, 563 A.2d 344, 347 (D.C.App. 1989) (reasoning that, because strict liability and implied warranty "represent but one tort" under D.C. law, it was error to give instruction as to both, for the dual submission gave rise to inconsistent findings that the product was unfit for their ordinary purpose but not unreasonably dangerous).

**22.** *See, e.g., Foster*, 621 F.2d at 719 (holding that, under Texas law, plaintiffs were not entitled to separate instructions on breach of warranty, because the proof required under both theories was substantially similar and the jury's finding of no defect precluded recovery under both strict liability and warranty); *Basko*, 416 F.2d at 427 (holding that, under Connecticut law, it was not error to refuse an instruction on breach of implied warranty, because defect under strict liability is equivalent to breach of an implied warranty of merchantability); *see also Brewer*, 724 F.2d at 656 (8th Cir.1983) (applying Ark. law) (holding that, under Arkansas law, it was not reversible error to refuse a warranty question because, under the facts and circumstances, the alleged defect in warranty was the same defect that rendered the product unreasonably dangerous); *cf. Chestnut*, 445 F.2d at 968–969 (holding that, under Virginia law, it was not error to charge the jury on warranty and refuse strict liability and negligence submissions, on the grounds that the safety standard is the same under all three theories). *See generally* Allan E. Korpela, Annotation, *Necessity and Propriety of Instructing on Alternative Theories of Negligence or Breach of Warranty, Where Instruction on Strict Liability in Tort is Given in Products Liability Cases*, 52 A.L.R.3d 101, 103 (1973) (noting the "reluctance on the part of courts to give [both] instructions where the particular facts ... do not require them, for fear of creating ... confusion").

*bility* also supports a single submission to the jury in such cases:

> [T]wo or more factually identical defective design claims ... should not be submitted to the trier of fact in the same case under different doctrinal labels. Regardless of the doctrinal label attached to a particular claim, design ... claims rest on a risk-utility assessment. To allow two or more factually identical risk-utility claims to go to a jury under different labels, whether "strict liability," "negligence," or "implied warranty of merchantability," would generate confusion and may well result in inconsistent verdicts.

\* \* \*

> The same analysis applies to claims against a nonmanufacturing supplier.... The plaintiff in the nonmanufacturing supplier case should, once again, not be free to submit a case to a jury based on both the implied warranty of merchantability and strict liability theories since they are based on the same factual base—the sale by the supplier of a defective product regardless of fault. The theories are thus duplicative and do not constitute valid separate claims that may be given to the trier of fact in the same case.[23]

As we have noted, for cases tried since the 1993 effective date of chapter 82 of the Civil Practice and Remedies Code, the findings required to establish a design defect claim are identical, regardless of the legal theory asserted.[24]

## III

While the concepts of defect are functionally indistinguishable for strict liability and breach of implied warranty in a case like the one before us, other elements of the two causes of action are different. For example, for strict liability a product defect must be shown to have been only a producing cause—that is, a "but for" cause—of injury, while liability for breach of warranty requires a showing of proximate cause—that is, "but for" causation and foreseeability.[25] In the case before us, the district court inquired of the jury about producing cause only. Although Hyundai would have been entitled to a finding of proximate cause as a predicate for Rodriguez's recovery for breach of warranty, Hyundai did not object to the charge for this omission. Had Hyundai done so, the court would have been required to ask the jury for separate findings concerning producing cause and proximate cause. Rodriguez's requested question and instruction correctly incorporated the element of proximate cause, but the court's refusal to submit the question to the jury did not harm Rodriguez because the charge as submitted would have allowed her the full recovery she sought on the lesser finding of producing cause.

We recognize, too, that the consequences of liability determinations under strict liability and breach of warranty theories are different.[26] Liability for breach of an implied warranty of merchantability is restricted to merchants;[27] strict liability

---

**23.** RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. n, at 41–42 (Proposed Final Draft, 1997).

**24.** TEX. CIV. PRAC. & REM.CODE §§ 82.001(2), 82.005.

**25.** *See Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex.1995) ("[P]roducing cause is the test in strict liability. Proximate and producing cause differ in that foreseeability is an element of proximate cause, but not of producing cause." (citation omitted)); *Signal Oil & Gas Co. v. Universal Oil Prods.,* 572 S.W.2d 320, 328 (Tex.1978) (stating that breach of warranty claims require proof that

the breach proximately caused the plaintiff's injury).

**26.** *See Garcia v. Texas Instruments, Inc.,* 610 S.W.2d 456, 462 (Tex.1980) ("[T]he Code [i.e., implied warranty] establishes an alternative remedy to strict liability in tort with respect to injuries suffered from a defective product."); *see also Mid Continent Aircraft Corp. v. Curry County Spraying Serv., Inc.,* 572 S.W.2d 308, 311 (Tex.1978) (characterizing strict liability in tort and warranty liability in contract as having an "entangled relationship in the area of products liability").

**27.** TEX. BUS. & COM.CODE § 2.314(a).

**668**

is not so limited.[28] A breach of warranty may be a basis for recovery under the Deceptive Trade Practices—Consumer Protection Act; strict liability is not.[29] For breach of an implied warranty a plaintiff may recover only actual damages,[30] but recovery under the DTPA may include statutory damages and attorney fees;[31] in an action for strict liability a plaintiff may recover actual and punitive damages, but not attorney fees.[32] The statute of limitations is four years on a breach of warranty claim[33] but only two years on a strict liability claim.[34] These are but some of the differences (none of which were involved in this case).

 Plaintiffs are generally entitled to obtain findings that will support alternative theories of recovery, even if those theories address but a single injury. In such cases, the trial court should structure the jury charge to obtain findings that will allow the plaintiff to elect a basis of recovery, and the defendant to assert defenses that may not be available to all theories. Our holding today does not hamper the trial court from submitting a charge on multiple theories. We hold only that the jury should not be asked to consider the identical defect finding in response to questions relating to strict-liability and breach-of-implied-warranty claims.

\* \* \* \* \*

For the reasons we have explained, the court of appeals erred in reversing the judgment of the district court. Accordingly, we reverse the judgment of the court of

appeals and render judgment that Rodriguez take nothing.

---

28. RESTATEMENT (SECOND) OF TORTS § 402A cmt. f (1965).

29. TEX. BUS. & COM.CODE § 17.50(a).

30. *Id.* §§ 2.714(b)–(c), 2.715.

31. *Id.* § 17.50(b), (d).

32. *See* TEX. CIV. PRAC. & REM.CODE § 41.003(a); *Travelers Indem. Co. v. Mayfield*, 923 S.W.2d

590, 593 (Tex.1996) ("In Texas, attorney's fees may not be recovered from an opposing party unless such recovery is provided for by statute or by contract between the parties.").

33. TEX. BUS & COM.CODE § 2.725(b).

34. TEX. CIV. PRAC & REM.CODE § 16.003.