Bryan FLOCK, et al., Plaintiffs,

v.

SCRIPTO–TOKAI CORP.,
et al., Defendants.

No. CIV.A. H–00–3794.

United States District Court,
S.D. Texas.

Dec. 19, 2001.

Barbara Radnofsky, Houston, TX, for Plaintiff.

David M. Prichard, San Antonio, TX, Mark Suzumoto, Santa Monica, CA, Attorney for Defendant/3rd Party Plaintiffs.

Jimmy D. Johnson, Houston, TX, Attorney for 3rd Party Defendant.

Opinion on Summary Judgment

HUGHES, District Judge.

1. *Introduction.*

A blaze consumed the trailer home of a playing child and his sleeping mother, killing them both. At the spot believed to be the fire's origin, investigators found the tip of a lighter. The plaintiffs assert that the lighter was defective and that the defect caused the injuries. Because the plaintiffs have only conjecture about an actual source, they cannot prove that a defect in the lighter sparked the fire. Their claims will be denied.

2. *Background.*

Shonda Munsinger and her son, Brandon Flock, lived with Munsinger's boyfriend, Kenneth Keith Mann, in a rented trailer home in Conroe, Texas. When Mann left for work one morning, Munsinger was still in bed although Brandon was up and playing. Later that morning, a fire devoured the trailer, killing Brandon and his mother.

Montgomery County investigators pinpointed Brandon's bedroom as the point of origin of the fire. There, they found the metal tip of an Aim 'n Flame brand utility lighter, manufactured by Scripto–Tokai. The parts of the lighter that could have been used to determine when it was built were destroyed in the fire.

Munsinger's parents, Flock's father, and the trailer owner sued Scripto–Tokai, alleging that a defect in the lighter caused the blaze. They asserted product liability, warranty, and deceptive trade claims, and they asked for exemplary damages for Scripto's fraudulent and malicious behavior in keeping a defective lighter on the market.

Scripto impleaded Mann as a third-party defendant, arguing that he had a duty to install and maintain working smoke detectors. The court referred the case to a magistrate judge for pre-trial management, and Scripto and Mann moved for summary judgment. The magistrate judge recommended granting summary judgment on several of the plaintiffs' claims and going forward with Scripto's third-party claims and the plaintiffs' remaining claims. The parties objected to the memorandum and recommendations.

3. *Design Defect.*

█ A plaintiff with a design defect claim must show there was a safer alternative design for the product and that the defect was a cause of the injury. Tex. Civ. Prac. & Rem. Code § 82.005. The design must be unreasonably dangerous considering the product's utility and the risk in using it. Of the seven factors that bear on the analysis of unreasonable danger, three are relevant here:

- How easily the unsafe element could have been eliminated without (a) seriously impairing its usefulness or (b) significantly increasing its cost,

- Whether the public is generally aware of the product's inherent dangers, and

- The ordinary customer's expectations.

*American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 432 (Tex.1997).

█ Scripto's Aim 'n Flame lighters have an on/off switch. Pulling the trigger when the switch is off will not light the lighter. The plaintiffs' expert testified that the switch on pre–1996 Aim 'n Flame models gradually moved from "off" to "on" if the trigger was pulled repeatedly. The

plaintiffs claim that this is a design defect and assert that the lighters could have been designed to reduce or eliminate the slippage. Scripto redesigned its Aim 'n Flame lighters in 1996 to make slippage much less likely. The plastic casings are the only way to differentiate the pre- and post–1996 models.

The 1996 redesign is consistent with a finding that the lighters were made safer without making them significantly less useful or more expensive, but this assumption is tempered by other factors. Lighters are designed to ignite fires. Lighter purchasers want a tool to ignite fires. The general public is aware that things burn when exposed to flame and that children should not run unsupervised pyrology experiments. Parents do not expect a switch to thwart resourceful children, most of whom will discover that the trigger depresses and the flame is kindled when the switch is moved to "on."

■ The plaintiffs misapprehend the difference between inherent and unreasonable danger. There is an inherent danger in a product whose sole design is to ignite fires; fire, after all, can be dangerous. A product's safety, however, is determined in the context of its intended use—in this case, igniting fires. Inherent danger is only one factor, not usually sufficient by itself, used to determine whether a product is unreasonably dangerous. *See Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 259–61 (Tex.1999).

Even assuming the pre–1996 lighter design was defective, the plaintiffs cannot prove that a defective lighter caused the fire. It is impossible to tell whether the lighter was a pre- or post–1996 design because its identifying components were destroyed. There is no evidence on when the lighter was purchased. There is no data on the number of pre–1996 lighters that were manufactured and the number of them still in use; there is no data on how many post–1996 lighters have been sold. Because of this lack of evidence, Scripto is entitled to judgment as a matter of law.

### 4. *Causation.*

■ Assuming that the lighter was defective, the plaintiffs have no evidence that the defect actually caused the fire. The defect alleged is that the on/off switch gradually slid to the "on" position after several trigger pulls. The plaintiffs have no idea how the fire started; they merely postulate that Brandon sat in his room pulling the lighter's trigger until a conflagration broke out. The equally likely scenario is that Brandon used the lighter exactly as it was supposed to be used: He slid the switch to "on" and pulled the trigger. If so, then the defect had nothing to do with the cause of the fire. No evidence points either way. The plaintiffs must present some evidence that the defect led to the fire; they have only speculation.

Further, the plaintiffs cannot show that the fire would not have occurred if the lighter had not been defective. Both Aim 'n Flame models have a switch that users are supposed to move to "on" before pulling the trigger to spark a flame. If a person used the lighter as he was supposed to, it would not matter whether it was a pre- or post–1996 model, both of which have the same correct operating procedures. If the fire was started by Brandon using a pre–1996 lighter as one is supposed to—by sliding the switch to "on" and pulling the trigger—then it would not have mattered if he had used a post–1996 lighter instead; he would have started the fire regardless of the Aim 'n Flame model in his hands.

### 5. *Warranty.*

The warranty claims require the same evidence of causation as the product liabili-

ty claims. TEX. CIV. PRAC. & REM. CODE § 85.001; *see Hyundai Motor Co. v. Rodriguez,* 995 S.W.2d 661, 667 (Tex.1999). They are thus untenable.

### 6. *Deceptive Trade Practices.*

Two things are necessary for Scripto to be liable for deceptive trade practices:

- Scripto (a) withheld information that would have led Munsinger to buy a different lighter or (b) represented that the lighter had characteristics it lacked, and

- Munsinger relied on Scripto to her detriment.

TEX. BUS. & COM. CODE §§ 17.46(b)(5), 17.46(b)(24), 17.50(a)(1)(B).

No evidence exists that Scripto represented that the lighter was child resistant. There is not even evidence that Munsinger was the buyer. Magistrate judge's memorandum at 29. There can thus be no evidence that Munsinger relied on anything that Scripto said or that she would have purchased a different lighter if Scripto had said something different. Because there is no evidence to support deceptive trade liability, the plaintiffs cannot recover exemplary damages.

### 7. *Conclusion.*

The plaintiffs cannot prove that there was a defect in the lighter. Assuming there was a defect in the lighter, they cannot establish that the particular defect was connected to the fire. Because they have no evidence of defect or causation, they cannot recover on their warranty claims. There is no evidence Scripto represented that the Aim 'n Flame was child resistant, so the plaintiffs cannot recover for deceptive trade injuries.

The magistrate judge's memorandum will be adopted to the extent that it recom-

mends granting Scripto's motion for summary judgment; this opinion stands in place of the remainder. Scripto's motion for summary judgment will be granted. Mann's motion for summary judgment will be denied as moot, and Scripto's third-party claims will be dismissed as moot.

Order and Final Judgment

1. The magistrate judge's memorandum is adopted to the extent it recommends granting Scripto's motion for summary judgment.

2. Scripto's motion for summary judgment is granted (88).

3. Mann's motion for summary judgment is denied as moot (89).

4. Scripto's claims against Mann are dismissed as moot.

5. Bryan Flock, Omy Ray Munsinger, Patricia Munsinger Harris, and Mickey Britt take nothing from Scripto–Tokai Corporation and Tokai Corporation.