NO. 07-03-0175-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



OCTOBER 31, 2005


 ______________________________



CONNIE SEYMORE AND GENE SEYMORE, APPELLANTS



V.



MICHAEL MARK DORSETT, M.D., APPELLEE


_________________________________



FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2001-514,917; HONORABLE SAM MEDINA, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL, J. (1)

MEMORANDUM OPINION


 This is an appeal from a judgment entered on the jury's verdict in favor of Michael
Mark Dorsett, M.D., in the medical negligence action brought against him by appellants
Connie and Gene Seymore. We will affirm.

 The Seymores claims against Dorsett arose from an abdominal hysterectomy (2) he
performed on Connie Seymore. The surgery was complicated by the necessity to remove
a large mass (3) and by adhesions, likely caused by Seymore's previous abdominal and
pelvic surgeries. Dorsett found part of Seymore's small bowel adhered to the peritoneum,
to the abdominal wall and to the mass. The mass also was adhered to the ureter. 
Performance of the surgery required that he lyse, or cut through, those adhesions. 

 During the surgery, Dorsett injured Seymore's ileum, a part of the small bowel. The
injury was not discovered until three days after the operation. Repair of the injury required
a second surgery with colostomy, an additional 24 days in the hospital and a third surgery
to reverse the colostomy.

 The Seymores did not allege that the injury to the bowel resulted from negligence,
but alleged that Dorsett negligently failed to examine properly the length of the bowel
involved in the procedures he performed to check for damage.

 Dorsett completed a residency in obstetrics and gynecology and is board certified
in those specialties. Dorsett testified that he paid careful visual attention to the area of the
bowel where he performed the lysis of adhesions. He acknowledged, though, he did not
"run the bowel," a process described in testimony as physically running the bowel through
the surgeon's hands, turning it centimeter by centimeter so that the bowel can be inspected
for damage from all angles. Dorsett testified that gynecologists generally do not "run the
bowel." 

 Dorsett's expert at trial was Dr. Brent Nall, also board certified in obstetrics and
gynecology. Nall testified he had performed over 2,000 hysterectomies of the type Dorsett
performed on Seymore. He testified gynecologists do not "run the bowel." Because
gynecologists are not trained in surgery of the digestive tract, a gynecologist "running the
bowel" could cause more damage than would be found, he said. (4)

 Dorsett was assisted during Seymore's surgery by Dr. Susan Devine. She is also
board certified in obstetrics and gynecology and has performed a few hundred
hysterectomies, during which she has never "run the bowel." She testified that she did not
suggest Dorsett "run" Seymore's bowel because gynecologists do not perform that
procedure.

 The Seymores presented the testimony of Dr. Stephen Barnes, a board certified
general surgeon. Barnes is not board certified in obstetrics and gynecology. He testified
that he performs abdominal hysterectomies, and that the standard of care was the same
for general surgeons and gynecological surgeons performing the surgery involved here. 
Barnes further testified Dorsett should have "run the bowel" before closing Seymore's
abdomen, and opined that Dorsett would have discovered the injury to her bowel if he had
done so. His failure to "run the bowel" after lysing the adhesions caused his treatment of
Seymore to fall below the standard of care.

 At the charge conference, the Seymores' counsel objected to the trial court's
proposed definition of "negligence," which was phrased in terms of what a "gynecological
surgeon of ordinary prudence" would have done under the same or similar circumstances. 
The Seymores' counsel submitted two proposed definitions of "negligence." The first was
phrased in terms of what a "physician performing lysis of pelvic and abdominal adhesions
of ordinary prudence" would have done under the same or similar circumstances. The
second was phrased in terms of what a "physician performing abdominal surgery of
ordinary prudence" would have done.

 The Seymores made a corresponding objection and submitted corresponding
definitions for "ordinary care" and "proximate cause," substituting in the definitions
"physician performing lysis of pelvic and abdominal adhesions" and "physician performing
abdominal surgery" for "gynecological surgeon." The trial court overruled all of the
Seymores' objections and declined to submit their proposed definitions. Their sole issue
on appeal challenges those rulings. 

 A trial court is to include in its charge the questions, instructions and definitions
raised by the written pleadings and the evidence. Tex. R. Civ. P. 278; Hyundai Motor Co.
v. Rodriguez, 995 S.W.2d 661, 663 (Tex. 1999). The trial court has considerable discretion
in framing a jury charge and is given wide latitude to determine the propriety of explanatory
instructions and definitions. H.E. Butt Grocery Co. v. Bilotto, 985 S.W.2d 22, 23 (Tex.
1998); Redwine v. AAA Life Ins. Co., 852 S.W.2d 10, 14 (Tex. App.-Dallas 1993, no writ). 
Accordingly, we review the court's rulings under an abuse of discretion standard. Hiroms
v. Scheffey, 76 S.W.3d 486, 487 (Tex. App.-Houston [14th Dist.] 2002, no pet.). A trial
court abuses its discretion if it acts without regard to any guiding rules or principles. Id.;
Texas Dep't of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex. 1990). 

 The definitions given by the trial court track the language of the recommended
definitions provided by section 50.1 of the Texas Pattern Jury Charges, with the term
"gynecological surgeon" inserted in the place of "physician" as suggested by the comments
to section 50.1. 3 Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury
Charges-Malpractice, Premises, Products, PJC 50.1 (2000) (according to the comments
to section 50.1, the "term designating the particular medical specialist involved (i.e. an
orthopedic surgeon) should be substituted for the words a physician"). (5) 

 The Seymores contend the trial court's definitions couching the standard of care 
in terms of an ordinarily prudent gynecological surgeon implied that the only standard of
care applicable to Dorsett's treatment was that to which Dorsett's gynecologist expert
witnesses testified and, therefore, constituted a negative comment on their expert's
testimony and an endorsement of Dorsett's evidence. They argue that to allow a physician
from a different discipline to provide expert testimony regarding the standard of care
applicable to a procedure and then to instruct the jury in a manner that is not inclusive of
the proffered expert's field of expertise is "tantamount to a trial court commenting on the
weight of the testimony and evidence presented." We disagree that the charge constituted
such an impermissible direct comment in this case.

 Rule of Civil Procedure 277 requires the trial court avoid commenting directly on the
weight of the evidence in its charge. Tex. R. Civ. P. 277. An impermissible comment on
the weight of the evidence occurs, when after examining the entire charge, it is determined
that the judge assumed the truth of a material controverted fact, or exaggerated,
minimized, or withdrew some pertinent evidence from the jury's consideration. First Nat'l
Bank of Amarillo v. Jarnigan, 794 S.W.2d 54, 62 (Tex. App.-Amarillo 1990, writ denied);
American Bankers Ins. Co. of Florida v. Caruth, 786 S.W.2d 427, 434 (Tex. App.-Dallas
1990, no writ). An instruction also is an improper comment on the weight of the evidence
if it suggests to the jury the trial judge's opinion concerning the matter about which the jury
is asked. Redwine, 852 S.W.2d at 14. Incidental comments are permissible when
necessary or proper as part of an explanatory instruction or definition. Id.; American
Bankers, 786 S.W.2d at 434.

 Barnes did not testify that the only standard of care applicable to Dorsett's treatment
was that of a general surgeon or that a standard of care for gynecological surgery was an
inappropriate measure of Dorsett's actions. On the contrary, he testified that, with respect
to procedures related to lysing adhesions in the abdomen or pelvis, the standard of care
was the same for general and gynecological surgeons. (6) Further, Barnes specifically
testified to the standard of care applicable to a gynecological surgeon. He was questioned
about the "minimal acceptable standard of care for a gynecological surgeon performing the
work that Dr. Dorsett was doing on [Connie Seymore] . . . ." (7) He also testified that some of
the committees on which he had served dealt with "standards of care for gynecological
surgery." 

 Dorsett, Nall and Devine each indicated that the standard of care applicable to
gynecologists did not require Dorsett to "run the bowel" in the manner suggested by
Barnes. But given the extensive use of the term "gynecological" during Barnes' testimony,
the trial court's use of that term in the definitions of negligence, ordinary care and
proximate cause did not suggest to the jury that they should accept the testimony of
Dorsett and his experts rather than that of Barnes. The definitions did not constitute a
direct comment on the weight of the evidence. 

 The Seymores also contend the trial court should have modified the definitions of
"negligence" and "ordinary care" to refer to the area of Seymore's body involved in the
surgery because the testimony indicated that physicians trained in more than one specialty
perform that type of surgery. They point to the comments to section 50.1 of the cited
pattern jury charges for medical malpractice that discuss casting the standard of care
definitions in terms of the affected body area (i.e. "back surgeon," "breast surgeon," and
"foot surgeon") rather than by the doctor's area of practice (i.e. "neurosurgeon" or
"orthopedic surgeon" in the case of back surgery, "general surgeon" or "plastic surgeon"
in the context of breast surgery, and "orthopedic surgeon" or "podiatrist" in the case of a
foot surgery). 

 The Seymores' first amended petition alleged Dorsett performed a total abdominal
hysterectomy on Connie Seymore and that his negligent actions during the surgery caused
damage to her ureter (8) and bowel. Evidence showed performance of the hysterectomy
involved removal of the cysts associated with Seymore's fallopian tubes and required
significant lysing of adhesions involving those structures and Seymore's bowel. Dorsett's
board certification is in obstetrics and gynecology, and as noted, the standard of care was
discussed in terms of gynecological surgery during expert testimony for both sides. In its
task of crafting the charge to include the questions, instructions and definitions raised by
the pleadings and evidence, Hyundai Motor Co., 995 S.W.2d at 663, the trial court did not
abuse its discretion by incorporating the submitted term in the definitions in the charge or
by refusing the Seymores' submitted definitions. See Styers v. Schindler Elevator Corp.,
115 S.W.3d 321, 325 (Tex. App.-Texarkana 2003, pet. denied) (trial court did not abuse
discretion in its modifications of pattern charge definitions). 

 We overrule appellants' sole issue on appeal and affirm the judgment of the trial

 court. 

 James T. Campbell

 Justice





 


1. Former Chief Justice Phil Johnson was on the panel that heard oral argument. He
did not participate in the decision. Tex. R. App. P. 41.1(b).
2. The surgery also included a bilateral salpingo-oophorectomy, or removal of both
sets of fallopian tubes and ovaries.
3. Identified as a hydrosalpinx, or fluid-filled cyst, arising from Seymore's right
fallopian tube. Dorsett found and removed a similar cyst on the left side. 
4. Nall also testified a gynecologist performing surgery should be careful and
meticulous, should carefully examine the operative site for any sign of injury and should
consult a general surgeon if something out of the ordinary, like bruising, excessive bleeding
or bile, appears. Nall said Dorsett's actions were within the standard of care for a
gynecologist.
5. The charge thus defined "negligence" as "the failure to use ordinary care, that is
failing to do that which a gynecological surgeon of ordinary prudence would have done
under the same or similar circumstances or doing that which a gynecological surgeon of
ordinary prudence would not have done under the same or similar circumstances." 
"Ordinary care" was defined as "that degree of care that a gynecological surgeon of
ordinary prudence, would use under the same or similar circumstances." Finally, the court
defined "proximate cause" as "a cause which, in a natural and continuous sequence,
produces an event, and without which cause such event would not have occurred. In order
to be a proximate cause, the act or omission complained of must be such that a
gynecological surgeon using ordinary care would have foreseen that the event, or some
similar event, might reasonably result therefrom. There may be more than one proximate
cause of an event." The jury answered the liability question with respect to Dorsett in the
negative. 
6. Barnes further said the procedures for lysing adhesions encountered during
surgery in the abdomen "are the same across all specialties." Similarly, Dorsett
acknowledged during his testimony that both general and gynecological surgeons are
trained to perform lysis of pelvic and abdominal adhesions and that a patient could expect
the same level of care from either a general or gynecological surgeon performing
abdominal surgery.
7. The Agreed Statement of the Case submitted by the parties indicates Barnes
testified that Dorsett's actions violated the standard of care for a person performing
"abdominal or gynecological surgery." The record presented for our review also includes
the testimony of Barnes and Dorsett.
8. Seymore's left ureter also suffered a "crush injury" during the surgery performed
by Dorsett. He recognized the injury and consulted a urologist, who placed a stent in the
ureter before the completion of the surgery.