NO. 07-03-0175-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

OCTOBER 31, 2005
_____

CONNIE SEYMORE AND GENE SEYMORE, APPELLANTS

V.

MICHAEL MARK DORSETT, M.D., APPELLEE
_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-514,917; HONORABLE SAM MEDINA, JUDGE
_____

Before QUINN, C.J., and CAMPBELL, J.[1]

**MEMORANDUM OPINION**

This is an appeal from a judgment entered on the jury's verdict in favor of Michael Mark Dorsett, M.D., in the medical negligence action brought against him by appellants Connie and Gene Seymore. We will affirm.

---

[1] Former Chief Justice Phil Johnson was on the panel that heard oral argument. He did not participate in the decision. Tex. R. App. P. 41.1(b).

The Seymores claims against Dorsett arose from an abdominal hysterectomy[2] he performed on Connie Seymore. The surgery was complicated by the necessity to remove a large mass[3] and by adhesions, likely caused by Seymore's previous abdominal and pelvic surgeries. Dorsett found part of Seymore's small bowel adhered to the peritoneum, to the abdominal wall and to the mass. The mass also was adhered to the ureter. Performance of the surgery required that he lyse, or cut through, those adhesions.

During the surgery, Dorsett injured Seymore's ileum, a part of the small bowel. The injury was not discovered until three days after the operation. Repair of the injury required a second surgery with colostomy, an additional 24 days in the hospital and a third surgery to reverse the colostomy.

The Seymores did not allege that the injury to the bowel resulted from negligence, but alleged that Dorsett negligently failed to examine properly the length of the bowel involved in the procedures he performed to check for damage.

Dorsett completed a residency in obstetrics and gynecology and is board certified in those specialties. Dorsett testified that he paid careful visual attention to the area of the bowel where he performed the lysis of adhesions. He acknowledged, though, he did not "run the bowel," a process described in testimony as physically running the bowel through the surgeon's hands, turning it centimeter by centimeter so that the bowel can be inspected

_____

[2] The surgery also included a bilateral salpingo-oophorectomy, or removal of both sets of fallopian tubes and ovaries.

[3] Identified as a hydrosalpinx, or fluid-filled cyst, arising from Seymore's right fallopian tube. Dorsett found and removed a similar cyst on the left side.

for damage from all angles. Dorsett testified that gynecologists generally do not "run the bowel."

Dorsett's expert at trial was Dr. Brent Nall, also board certified in obstetrics and gynecology. Nall testified he had performed over 2,000 hysterectomies of the type Dorsett performed on Seymore. He testified gynecologists do not "run the bowel." Because gynecologists are not trained in surgery of the digestive tract, a gynecologist "running the bowel" could cause more damage than would be found, he said.[4]

Dorsett was assisted during Seymore's surgery by Dr. Susan Devine. She is also board certified in obstetrics and gynecology and has performed a few hundred hysterectomies, during which she has never "run the bowel." She testified that she did not suggest Dorsett "run" Seymore's bowel because gynecologists do not perform that procedure.

The Seymores presented the testimony of Dr. Stephen Barnes, a board certified general surgeon. Barnes is not board certified in obstetrics and gynecology. He testified that he performs abdominal hysterectomies, and that the standard of care was the same for general surgeons and gynecological surgeons performing the surgery involved here. Barnes further testified Dorsett should have "run the bowel" before closing Seymore's abdomen, and opined that Dorsett would have discovered the injury to her bowel if he had

---

[4] Nall also testified a gynecologist performing surgery should be careful and meticulous, should carefully examine the operative site for any sign of injury and should consult a general surgeon if something out of the ordinary, like bruising, excessive bleeding or bile, appears. Nall said Dorsett's actions were within the standard of care for a gynecologist.

3

done so. His failure to "run the bowel" after lysing the adhesions caused his treatment of Seymore to fall below the standard of care.

At the charge conference, the Seymores' counsel objected to the trial court's proposed definition of "negligence," which was phrased in terms of what a "gynecological surgeon of ordinary prudence" would have done under the same or similar circumstances. The Seymores' counsel submitted two proposed definitions of "negligence." The first was phrased in terms of what a "physician performing lysis of pelvic and abdominal adhesions of ordinary prudence" would have done under the same or similar circumstances. The second was phrased in terms of what a "physician performing abdominal surgery of ordinary prudence" would have done.

The Seymores made a corresponding objection and submitted corresponding definitions for "ordinary care" and "proximate cause," substituting in the definitions "physician performing lysis of pelvic and abdominal adhesions" and "physician performing abdominal surgery" for "gynecological surgeon." The trial court overruled all of the Seymores' objections and declined to submit their proposed definitions. Their sole issue on appeal challenges those rulings.

A trial court is to include in its charge the questions, instructions and definitions raised by the written pleadings and the evidence. Tex. R. Civ. P. 278; *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 663 (Tex. 1999). The trial court has considerable discretion in framing a jury charge and is given wide latitude to determine the propriety of explanatory instructions and definitions. *H.E. Butt Grocery Co. v. Bilotto*, 985 S.W.2d 22, 23 (Tex.

4

1998); *Redwine v. AAA Life Ins. Co.*, 852 S.W.2d 10, 14 (Tex. App.–Dallas 1993, no writ). Accordingly, we review the court's rulings under an abuse of discretion standard. *Hiroms v. Scheffey*, 76 S.W.3d 486, 487 (Tex. App.–Houston [14th Dist.] 2002, no pet.). A trial court abuses its discretion if it acts without regard to any guiding rules or principles. *Id.*; *Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990).

The definitions given by the trial court track the language of the recommended definitions provided by section 50.1 of the Texas Pattern Jury Charges, with the term "gynecological surgeon" inserted in the place of "physician" as suggested by the comments to section 50.1. 3 Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges–Malpractice, Premises, Products, PJC 50.1 (2000) (according to the comments to section 50.1, the "term designating the particular medical specialist involved (i.e. *an orthopedic surgeon*) should be substituted for the words *a physician*").[5]

The Seymores contend the trial court's definitions couching the standard of care in terms of an ordinarily prudent gynecological surgeon implied that the only standard of

---

[5] The charge thus defined "negligence" as "the failure to use ordinary care, that is failing to do that which a gynecological surgeon of ordinary prudence would have done under the same or similar circumstances or doing that which a gynecological surgeon of ordinary prudence would not have done under the same or similar circumstances." "Ordinary care" was defined as "that degree of care that a gynecological surgeon of ordinary prudence, would use under the same or similar circumstances." Finally, the court defined "proximate cause" as "a cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a gynecological surgeon using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event." The jury answered the liability question with respect to Dorsett in the negative.

care applicable to Dorsett's treatment was that to which Dorsett's gynecologist expert witnesses testified and, therefore, constituted a negative comment on their expert's testimony and an endorsement of Dorsett's evidence. They argue that to allow a physician from a different discipline to provide expert testimony regarding the standard of care applicable to a procedure and then to instruct the jury in a manner that is not inclusive of the proffered expert's field of expertise is "tantamount to a trial court commenting on the weight of the testimony and evidence presented." We disagree that the charge constituted such an impermissible direct comment in this case.

Rule of Civil Procedure 277 requires the trial court avoid commenting directly on the weight of the evidence in its charge. Tex. R. Civ. P. 277. An impermissible comment on the weight of the evidence occurs, when after examining the entire charge, it is determined that the judge assumed the truth of a material controverted fact, or exaggerated, minimized, or withdrew some pertinent evidence from the jury's consideration. *First Nat'l Bank of Amarillo v. Jarnigan*, 794 S.W.2d 54, 62 (Tex. App.–Amarillo 1990, writ denied); *American Bankers Ins. Co. of Florida v. Caruth*, 786 S.W.2d 427, 434 (Tex. App.–Dallas 1990, no writ). An instruction also is an improper comment on the weight of the evidence if it suggests to the jury the trial judge's opinion concerning the matter about which the jury is asked. *Redwine*, 852 S.W.2d at 14. Incidental comments are permissible when necessary or proper as part of an explanatory instruction or definition. *Id*.; *American Bankers*, 786 S.W.2d at 434.

6

Barnes did not testify that the only standard of care applicable to Dorsett's treatment was that of a general surgeon or that a standard of care for gynecological surgery was an inappropriate measure of Dorsett's actions. On the contrary, he testified that, with respect to procedures related to lysing adhesions in the abdomen or pelvis, the standard of care was the same for general and gynecological surgeons.[6] Further, Barnes specifically testified to the standard of care applicable to a gynecological surgeon. He was questioned about the "minimal acceptable standard of care for a gynecological surgeon performing the work that Dr. Dorsett was doing on [Connie Seymore] . . . ."[7] He also testified that some of the committees on which he had served dealt with "standards of care for gynecological surgery."

Dorsett, Nall and Devine each indicated that the standard of care applicable to gynecologists did not require Dorsett to "run the bowel" in the manner suggested by Barnes. But given the extensive use of the term "gynecological" during Barnes' testimony, the trial court's use of that term in the definitions of negligence, ordinary care and proximate cause did not suggest to the jury that they should accept the testimony of

---

[6] Barnes further said the procedures for lysing adhesions encountered during surgery in the abdomen "are the same across all specialties." Similarly, Dorsett acknowledged during his testimony that both general and gynecological surgeons are trained to perform lysis of pelvic and abdominal adhesions and that a patient could expect the same level of care from either a general or gynecological surgeon performing abdominal surgery.

[7] The Agreed Statement of the Case submitted by the parties indicates Barnes testified that Dorsett's actions violated the standard of care for a person performing "abdominal or gynecological surgery." The record presented for our review also includes the testimony of Barnes and Dorsett.

7

Dorsett and his experts rather than that of Barnes. The definitions did not constitute a direct comment on the weight of the evidence.

The Seymores also contend the trial court should have modified the definitions of "negligence" and "ordinary care" to refer to the area of Seymore's body involved in the surgery because the testimony indicated that physicians trained in more than one specialty perform that type of surgery. They point to the comments to section 50.1 of the cited pattern jury charges for medical malpractice that discuss casting the standard of care definitions in terms of the affected body area (i.e. "back surgeon," "breast surgeon," and "foot surgeon") rather than by the doctor's area of practice (i.e. "neurosurgeon" or "orthopedic surgeon" in the case of back surgery, "general surgeon" or "plastic surgeon" in the context of breast surgery, and "orthopedic surgeon" or "podiatrist" in the case of a foot surgery).

The Seymores' first amended petition alleged Dorsett performed a total abdominal hysterectomy on Connie Seymore and that his negligent actions during the surgery caused damage to her ureter[8] and bowel. Evidence showed performance of the hysterectomy involved removal of the cysts associated with Seymore's fallopian tubes and required significant lysing of adhesions involving those structures and Seymore's bowel. Dorsett's board certification is in obstetrics and gynecology, and as noted, the standard of care was discussed in terms of gynecological surgery during expert testimony for both sides. In its

_____

[8] Seymore's left ureter also suffered a "crush injury" during the surgery performed by Dorsett. He recognized the injury and consulted a urologist, who placed a stent in the ureter before the completion of the surgery.

8

task of crafting the charge to include the questions, instructions and definitions raised by the pleadings and evidence, *Hyundai Motor Co.*, 995 S.W.2d at 663, the trial court did not abuse its discretion by incorporating the submitted term in the definitions in the charge or by refusing the Seymores' submitted definitions. *See Styers v. Schindler Elevator Corp.*, 115 S.W.3d 321, 325 (Tex. App.–Texarkana 2003, pet. denied) (trial court did not abuse discretion in its modifications of pattern charge definitions).

We overrule appellants' sole issue on appeal and affirm the judgment of the trial court.

James T. Campbell
Justice