In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00091-CV

                                                ______________________________

 

 

                                         ROBERT P.
BERG, Appellant

 

                                                                V.

 

                                           KRISTI WILSON, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 62nd
Judicial District Court

                                                           Hopkins County, Texas

                                                          Trial Court
No. CV38399

 

                                                       
                                           

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                    Opinion by Chief Justice Morriss








                                                                   O P I N I O N

 

            On May 19,
2008, by entering into a Rule 11[1]
settlement agreement, Robert P. Berg and Kristi Wilson “buried the hatchet” of
a pending business-separation lawsuit.  A
central question for this appeal is whether the handle was left sticking out,
in other words, whether Berg’s underlying claims, predating the settlement,
should have been part of the subsequent jury trial between Berg and Wilson.

            Berg, a
prominent designer of western jewelry, had met Wilson at the National Rodeo Finals
in Las Vegas in 2005.  Wilson, a
mortician, desired a change of career—she intended to pursue her interest in
all things western, having grown up raising horses and being involved in the
rodeo business.  Berg and Wilson began a
relationship and also began working together in Berg’s jewelry business, which
was in somewhat of a financial strait. 
Wilson used her contacts in the industry to help rebuild the business,
located in Yukon, Oklahoma.  The business
began to gain ground; in 2007, Wilson and Berg moved to Hopkins County and into
a newly purchased house on eighty-seven acres.[2]  Wilson and Berg lived together and
successfully operated the business of Bob Berg Designs, Inc., from that house.

            Then,
in March 2008, Berg and Wilson had a heated personal confrontation, which
resulted in Wilson leaving the house. 
When Wilson returned a few days later, she discovered that Berg had
moved the business inventory and financial records to the home of Martha
Hayward, their only employee.  As a
result, the business was left in disarray. 
The following month, Wilson sued Berg for breach of fiduciary duty,
seeking an accounting of partnership property and requesting a temporary
restraining order to enjoin Berg from removing, encumbering, or transferring
inventory of Bob Berg Designs, among other things.  The trial court issued a temporary
restraining order in April 2008.  The
following month, Wilson and Berg entered into the Rule 11 agreement, ostensibly
resolving all disputes between them.[3]  The agreement provided a number of
obligations, including one for Wilson to pay Berg the sum of $25,000.00, either
within thirty days of the agreement, or as soon as a contemplated real estate
loan was closed with a bank.  The real
estate loan was finalized August 20, 2008. 
Wilson, through counsel, tendered the $25,000.00 to Berg September 10,
2008.  Berg refused to accept the tender
of funds, claiming Wilson was in breach of the agreement.  He filed an amended answer and counterclaim
in the underlying lawsuit, alleging Wilson breached the Rule 11 agreement in
failing to pay the $25,000.00 in a timely fashion, in failing to return business
inventory, and in using copyrighted material in violation of the agreement.[4]

            Wilson filed
a motion to strike Berg’s amended pleadings, a motion to enforce the Rule 11
agreement, and a second amended original petition alleging Berg’s breach of the
Rule 11 agreement.[5]  Next, Wilson filed a motion for summary
judgment, alleging that the causes of action set forth in Berg’s amended answer
and counterclaim were released by the Rule 11 agreement and moving for judgment
on the affirmative defenses of accord and satisfaction and estoppel.  Berg responded, alleging that there were
genuine issues of material fact regarding Wilson’s alleged breach of the
agreement, thereby excusing Berg’s performance. 


            The trial court granted
partial summary judgment, finding the Rule 11 agreement was “valid, legal and
binding,” but reserving for trial the issues involving the parties’ compliance
or failure to comply with the Rule 11 agreement.  

            After
a four-day trial on the issue of whether either or both parties breached the
Rule 11 agreement, the jury determined that Berg breached the agreement and
Wilson did not.  The jury assessed
attorneys’ fees to Wilson.[6]  The final judgment ordered that Berg take
nothing on his counterclaim and awarded attorneys’ fees to Wilson in accordance
with the jury verdict.[7]


            We affirm
the judgment of the trial court because (1) addressing the
breach-of-settlement-agreement claims separately from the underlying claims was
within the trial court’s discretion, (2) Berg’s affirmative defenses were
fairly covered by the jury issues submitted, (3) declaring the lis pendens
void was not error, and (4) awarding Wilson attorneys’ fees was not error.

(1)        Addressing the
Breach-of-Settlement-Agreement Claims Separately from the Underlying Claims Was
Within the Trial Court’s Discretion

 

            In
multifarious sub-points all basically complaining of the perceived loss of his
counterclaim, Berg alleges trial court error. 
At its core, Berg’s complaint is that, because Berg claimed that Wilson
repudiated or breached the settlement agreement, Berg was entitled to elect his
remedy—to either proceed on the underlying cause of action or claim damages for
breach of the settlement agreement.  Berg
contends the partial summary judgment prevented him from presenting his counterclaims—those
matters purportedly resolved by the settlement agreement—to the jury.[8]

            Initially,
Berg phrases the issue as an election of remedies, relying on well established
Texas law that, when a claim is released for a promised consideration that is
not given, the claimant may either pursue rights under the release, or treat
the release as rescinded and recover on the underlying claim.[9]  Murray
v. Crest Constr., 900 S.W.2d 342, 344 (Tex. 1995); see also Hernandez v. LaBella,
No. 14-08-00327-CV, 2010 WL 431253 (Tex. App.—Houston [14th Dist.] Feb. 9,
2010, no pet.) (mem. op.) (repudiation or anticipatory breach of settlement
agreement permits nonbreaching party to elect not to proceed with settlement
agreement); BACM 2001-1 San Felipe Rd.
Ltd. P’ship v. Traflagar Holdings I,
Ltd., 218 S.W.3d 137, 146 (Tex. App.—Houston [14th Dist.] 2007, pet.
denied) (on failure of debtor to perform under executory accord, creditor may
treat accord as repudiated and may choose to claim rights under the original
cause of action or the accord); Shaw v.
Kennedy, Ltd., 879 S.W.2d 240,
247 (Tex. App.—Amarillo 1994, no pet.) (if settlement agreement breached,
nonbreaching party may treat agreement as repudiated and claim rights either
under the agreement or the underlying cause of action).

            The
hurdle Berg attempts to bypass is an actual finding of breach by Wilson.  Here, both Berg and Wilson alleged the other
breached the settlement agreement.  Berg
contends he should nevertheless have been permitted, on the mere allegation of breach, to try to the
jury the underlying claims ostensibly resolved by the settlement
agreement.  Berg relies on the
aforementioned cases in support of his contention that he was entitled to
proceed to trial on the underlying claims, without a judicial determination of
whether Wilson breached the settlement agreement.[10]

            In Murray, the primary case on which Berg
relies, Murray and Crest settled a job dispute by Murray executing a waiver of
lien in exchange for a promissory note from Crest.  Murray,
900 S.W.2d at 344.  Subsequently, Crest
informed Murray that it would not pay the full amount of the promissory note
when it came due, claiming it was entitled to offset certain completion costs
against the note.  After receiving the
claim for offset, Murray filed a lien against property in which Crest had an
interest.  Crest sued Murray, alleging
tortious interference with Crest’s contract with its general contractor.  Murray counterclaimed for breach of
contract.  In affirming the trial court’s
judgment in Murray’s favor, the high court determined that, once Crest
repudiated the settlement agreement, Murray was under no obligation to honor
the waiver of lien.  Id.  Crest’s breach gave
Murray an election to pursue a claim on the promissory note or to reassert its
original claim on the construction job.  Id.

            While Murray is instructive on the issue of
repudiation, it does not prescribe a procedure to determine the issue of breach
in a circumstance where, as here, repudiation is not the issue.[11]  Here, the primary issue was whether one or
both parties breached the Rule 11 settlement agreement.  The decision on whether Berg would be
entitled to try his counterclaims could not be made until such time as the
issue of breach of the settlement agreement was resolved.  This was acknowledged in the trial court.[12]

            Whether
a party has breached a contract is a question of fact to be determined by the
trier of fact.  Allied Capital Partners, L.P.
v. PTRI, 313 S.W.3d 460 (Tex. App.—Dallas 2010, no pet.).  Here, the jury determined that Berg, not
Wilson, breached the agreement.  This
determination foreclosed Berg’s option to try his counterclaims.  Berg maintains, however, that, even if it was
appropriate to try the settlement agreement issues, his counterclaims should
have been tried in the same trial.

            Wilson
contends the trial court was within its discretion to initially try the
contract claims, in reliance on the reasoning employed in Zars v. Esquivel, No. 04-04-00892-CV, 2005 WL 3115763 (Tex.
App.—San Antonio Nov. 23, 2005, no pet.) (mem. op.).  In that case, the parties entered into a
settlement agreement, which was allegedly breached.  The trial court granted summary judgment on
the breach of contract claim and thereafter severed the original, underlying
action.  On appeal, Zars claimed the
trial court erred in severing the underlying claims.  In finding no error, the court recognized
that the claimed breach of contract was a separate cause of action from the
underlying claims intended to be resolved by the settlement agreement.  The contract action involved different issues
and facts than the underlying claims. 
Because the breach-of-contract claim was one that would be the proper
subject of a lawsuit if independently asserted, the trial court did not abuse
its discretion in granting the severance. 
Id. at *2.

            Here, even
though the contract claims were not formally severed, those claims—which
involved different issues and were based on different facts than the underlying
claims—were tried separately.[13]  This was effectively a separate trial on the
breach-of-settlement-agreement claims,[14]
which eliminated the need to introduce evidence on the underlying claims that
would have been very time consuming and may have been prejudicial to one or
both parties.  This reasoning is likened
to that employed in insurance matters where bad faith claims are typically
severed from contract claims.  See U.S. Fire Ins. Co. v. Millard, 847
S.W.2d 668, 673 (Tex. App.—Houston [1st Dist.] 1993, writ denied).  In that case, the court explained that bad
faith, Insurance Code, and Deceptive Trade Practices Act (DTPA) claims are
dependent on the outcome of the contractual cause of action:

This result obtains because the
extra-contractual claims are based on allegations of bad faith on the part of
defendant in its investigation of the plaintiffs’ claims and inadequacy of its
settlement offers.  If, in the underlying
case, the defendant prevails on liability, or if the finder of fact concludes
that the plaintiffs’ damages do not exceed the defendant’s settlement offer,
then defendant’s conduct necessarily cannot have been in bad faith.  It would be a waste of the court’s, the jury’s,
the parties’, and the attorneys’ time to hear evidence on the bad faith claims
when a finding in the contract lawsuit could be peremptorily dispositive.

 

            This
reasoning applies here as well.  While a
balance must be struck between the ability to shorten the process and the need
to avoid piecemeal trials, the trial court’s action in first trying the contract
claims was reasonable and fit well with the logical structure of this
case.  The resolution of whether one or
both parties breached the agreement would determine whether Berg was entitled
to try his underlying counterclaims. 
Proceeding in this fashion allowed the trial court to defer—and thus
avoid—a full-blown trial on the issues of fraud, breach of fiduciary duty,
conversion, civil theft, and constructive trust.  Had the jury returned the opposite verdict,
Berg would have then been permitted to try his counterclaims, if he elected to
do so.  The trial court did not abuse its
discretion in choosing to initially try the claims that the settlement
agreement had been breached.[15]

(2)        Berg’s Affirmative Defenses Were Fairly
Covered by the Jury Issues Submitted

 

            Berg submitted the following
proposed jury question, which the trial court refused:

Was Bob Berg’s failure to comply excused?

 

            1.  Failure to comply by Bob Berg is excused by
Kristi Wilson’s previous failure to comply with a material obligation of the same
agreement.

 

            2.  Failure to comply by Bob Berg is excused by
Kristi Wilson’s prior repudiation of the same agreement.

 

            3.  A party repudiates an agreement when she
indicates by her words or actions that she is not going to perform her
obligations under the agreement in the future, showing a fixed intention to
abandon, renounce, and refuse to perform the agreement.

 

            Berg claims
this refusal constituted reversible error. 
We disagree.

 

            The
standard of review for alleged error in the jury charge is abuse of
discretion.  Lake Conroe Med. Ctr., Ltd.
v. KMT Bldg. Co., 290 S.W.3d 541 (Tex. App.—Beaumont 2009, no pet.).  A trial court’s refusal to submit a properly
requested question or instruction constitutes an abuse of discretion only if it
acts without guiding rules or principles. 
Tex. Dep’t of Human Servs. v. E.B.,
802 S.W.2d 647 (Tex. 1990).  “The goal of
the charge is to submit to the jury the issues for decision logically, simply,
clearly, fairly, correctly and completely.” 
Hyundai Motor Co. v. Rodriguez,
995 S.W.2d 661, 664 (Tex. 1999). 
Accordingly, the trial court is accorded broad discretion so long as the
jury charge is legally correct.  Id.

            Berg claims
that, because there was more than a scintilla of evidence in the record of
excuse and anticipatory repudiation, the trial court was required to submit the
foregoing question and instructions.  See id.
(trial court must submit all questions, instructions, and definitions raised by
evidence); Elbaor v. Smith, 845
S.W.2d 240, 243 (Tex. 1992) (same); see
also Tex. R. Civ. P. 278
(trial court shall submit questions, instructions, and definitions in form
provided by Rule 277 which are raised by pleadings and evidence).  Berg outlines in his brief the evidence at
trial he claims supported a submission of a jury question and instruction on
these affirmative issues.

            Wilson does
not contend the evidence was insufficient to submit a question on excuse based
on repudiation or failure to comply with a material obligation of the
agreement.  Rather, Wilson contends the
issue of excuse (based on repudiation and/or failure to comply) was subsumed
under the issues submitted.  As
previously discussed, the court submitted breach of contract questions
disjunctively, together with an instruction directing the jury to decide who
committed the first material breach.  The
commentary to PJC 101.2 (basic question on compliance) recognizes this method
of submission.

Disjunctive
question for competing claims of material breach.  If both parties allege a breach of
contract against one another, the court can ask the breach-of-contract question
disjunctively, together with appropriate instruction directing the jury to
decide who committed the first material breach. 
Mustang Pipeline Co. v. Driver
Pipeline Co., 134 S.W.3d 195, 200 (Tex. 2004).  An alternative way to submit competing claims
of breach of an agreement is set forth below.[16]

 

The trial court then submitted a conditional instruction to
determine who breached first (assuming both breached).  The PJC commentary states:

The Committee believes that this conditional
submission satisfies the supreme court’s instruction in Mustang Pipeline Co., 134 S.W.3d at 200, to have the jury determine
which party breached first and thereby excused performance by the other
party.  See Mustang Pipeline Co., 134 S.W.3d at 200.  

 

Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges:  Business, Consumer, Insurance &
Employment PJC 101.2 (2010).  The
jury found that Berg breached the agreement and that Wilson did not.

            In Mustang, both parties raised the other’s
material breach as an affirmative defense. 
Here, Wilson alleged Berg’s breach and Berg asserted the affirmative
defense of excuse based on Wilson’s material breach:[17]  “Defendants also pled, as an affirmative
defense to any claims brought by Plaintiff under any purported Rule 11
Settlement Agreement, that they are excused from performing under any such Rule
11 Settlement Agreement because Plaintiff materially breached any such Rule 11
Settlement Agreement.”[18]


            After
discussing the issue of whether a material breach ensued, the high court noted
that “these problems could have been avoided had the trial court submitted the
breach of contract question disjunctively.” 
Mustang Pipeline Co., 134
S.W.3d at 200.  In the standard contract
dispute, one party refuses to perform due to the alleged breaches by the
other—just as in this case.  When that
happens, “jurors will often find both parties failed to comply with the
contract (as they did here) unless instructed that they must decide who
committed the first material breach.”  Id. (citing Mead v. Johnson Group, Inc.,
615 S.W.2d 685, 689 (Tex. 1981)) (default by one contracting party excuses
performance by the other).

            Because both
parties claimed breach—Wilson in her case-in-chief and Berg as an affirmative
defense—the trial court followed the directive of the Texas Supreme Court in
submitting the breach of contract question disjunctively, accompanied by an
appropriate instruction directing the jury to decide who committed the first
material breach.  As the matter was
submitted, Berg would have been excused from performance under the settlement
agreement if the jury would have found Wilson committed the first material
breach of that agreement.

            VingCard A.S. v. Merrimac Hospitality
Systems, Inc., 59 S.W.3d 847
(Tex. App.—Fort Worth 2001, pet. denied), presents a similar situation.  In that case, Merrimac sued VingCard for
breach of contract.  VingCard asserted
Merrimac’s “prior material breach” as both an affirmative defense and a
counterclaim.  VingCard requested the
following question and instruction on its excuse defense:

Was VingCard A.S.’s violation excused?

 

A party’s violation of a contract is excused by
the other party’s prior unexcused violation of a material obligation of the
contract.

 

Id. at 865.  The Fort Worth court found the trial court
submitted VingCard’s counterclaim issue by asking whether Merrimac “fail[ed] to
fulfill” the agreement and “fail[ed] to cure the non-fulfilling element(s), if
any, within a reasonable time.”  Id. 
Citing Hyundai Motor Co., 995
S.W.2d at 664, the court recognized that “a single, broad form question may
relate to multiple legal theories to avoid the risk that the jury will become
confused and answer questions incorrectly.” 
VingCard, 59 S.W.3d at
865.  Moreover, 

While the trial court’s questions should obtain fact-findings
on all theories pleaded and supported by evidence, a trial court is not
required to, and should not, confuse the jury by submitting differently worded
questions that call for the same factual finding.

 

Id. at 865–66 (citing
Hyundai Motor Co., 995 S.W.2d at
665–66).  The court concluded: 

 

Here, the trial court’s decision to submit a
broad form issue regarding Merrimac’s breach of the agreement subsumed both
VingCard’s affirmative defense of excuse and its counterclaim for breach of
contract.  By finding Merrimac had not
violated any material obligation of the VingCard contract, the jury necessarily
found that VingCard’s termination of the agreement was not excused.  Because the submitted charge allowed
consideration of VingCard’s affirmative defense of excuse, we conclude the
trial court did not abuse its discretion in refusing VingCard’s requested issue
on excuse. 

 

Id. at 866.

 

            Berg
attempts to distinguish VingCard on
the basis that here, the separate claims of material breach and repudiation
each have distinct elements.  This is an
accurate statement—Berg’s defense of excuse was based on either material breach
or repudiation.  Material breach is
defined as the “previous failure to comply with a material obligation of the
same agreement.”  Texas Pattern Jury Charges:  Business, Consumer, Insurance & Employment PJC 101.2.  The Pattern Jury Charges set out a separate
instruction on anticipatory repudiation:

A party repudiates an agreement when he
indicates, by his words or actions, that he is not going to perform his
obligations under the agreement in the future, showing a fixed intention to
abandon, renounce, and refuse to perform the agreement.

 

Texas Pattern Jury
Charges:  Business, Consumer, Insurance & Employment PJC 101.2.  

 

            Because the
jury found that Wilson was not in material breach of the agreement, it could
not have logically found repudiation. 
This is especially true in light of the fact that the alleged
repudiation (asserted only in Berg’s counterclaim for breach of contract) was
supported by the same facts alleged
to have caused the breach.[19]  

            The issues
of excuse and/or repudiation were subsumed by the trial court’s submission of
disjunctive questions for competing claims of material breach, together with an
instruction directing the jury to determine who committed the first material
breach.  The trial court therefore did
not abuse its discretion in failing to submit separate issues on these
affirmative defenses.

(3)        Declaring the Lis Pendens Void Was Not
Error

 

            Before
the settlement agreement was made, Berg asserted an ownership interest in the
real property (eighty-seven acres and house) titled in Wilson’s name.  This alleged ownership interest stems from a
$100,000.00 cash down payment on the property made from the proceeds of Berg’s
business.  With respect to the real
property, the settlement agreement provided:

At the same time as the closing, [of the loan to
obtain funds to pay Berg under the agreement] or if it is not necessary for
Wilson to get a loan, Berg will execute a special warranty deed to waive any
and all interest he has in the 89 acres that was described on Plaintiff’s
Exhibit 6 earlier today to Ms. Wilson, and he will cause the lis pendens notice
that’s been issued in this case to be removed. 


 

The final judgment stated that “IT IS FURTHER ORDERED that
the Notice of Lis Pendens filed by Defendant, Robert P. Berg on or about June
27, 2008 in Hopkins County is void.”

            Berg claims
the trial court erred in voiding the lis pendens, “because there were genuine
issues of material fact as to whether Wilson substantially complied and Berg
had the right to elect to pursue his underlying claims to the real property.” 

            The
purpose of filing a lis pendens is twofold—to protect the rights the filing
party claims in the property disputed in the lawsuit and to put those
interested in the property on notice of the lawsuit.  Collins
v. Tex Mall, L.P., 297 S.W.3d
409, 418 (Tex. App.—Fort Worth 2009, no pet.). 
A lis pendens notice, however, operates only during the pendency of the
lawsuit and terminates with the judgment, in the absence of appeal.  Hartel
v. Dishman, 145 S.W.2d 865, 869 (Tex. 1940); Collins, 297 S.W.2d at 418. 
Because the lis pendens terminates with the judgment, it was not
necessary for the trial court to declare the lis pendens void.  It was not, however, error to do that which
was unnecessary, but was the result of the judgment.  Berg fails to explain why the normal rules of
lis pendens application should not apply here. 
We overrule this point of error.[20]

(4)        Awarding Wilson
Attorneys’ Fees Was Not Error

 

            Berg also
contends the trial court erred in awarding Wilson attorneys’ fees under the
Uniform Declaratory Judgments Act (UDJA) because hers was a suit to try
title.  Berg bases this contention on
language in Wilson’s second amended original petition alleging that, as part of
her breach of contract claim, Berg “released, transferred, and/or conveyed any
interest which he had in the tract of land” in accordance with the terms of the
agreement.  Berg contends that because
Wilson’s claim for declaratory relief was merely incidental to title issues,
the UDJA does not authorize an award of attorneys’ fees.  See
Kenedy Mem’l Found. v. Dewhurst, 90 S.W.3d 268, 289 (Tex. 2002).  Section 22.001 of the Texas Property Code provides
that a “trespass to try title action is the method of determining title to
lands, tenements, or other real property.” 
Tex. Prop. Code Ann. §
22.001 (West 2000).  It is the exclusive
remedy by which to resolve competing claims to property.  Ely v.
Briley, 959 S.W.2d 723, 727 (Tex. App.—Austin 1988, no pet.).

            In her
second amended original petition, Wilson asked the trial court to declare that
the real property is her sole and separate property, pursuant to the UDJA.  See Tex. Civ. Prac. & Rem. Code Ann. §
37.002 (West 2008).  Additionally, Wilson
specifically requested attorneys’ fees pursuant to Chapter 37.009 of the Texas Civil
Practice and Remedies Code.  See Tex.
Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008) (“In any proceeding
under this chapter, the court may award costs and reasonable and necessary
attorneys’ fees as are equitable and just.”).

            A
declaration under the UDJA is appropriate “to settle and afford relief from
uncertainty and insecurity with respect to rights, status, and other legal
relations.”[21]  Tex.
Civ. Prac. & Rem. Code Ann. § 37.002(b).  Under the UDJA, the court “may award . . .
reasonable and necessary attorneys’ fees as are equitable and just.”  Tex.
Civ. Prac. & Rem. Code Ann. § 37.009. 

            Berg
does not question the amount of the fees, but rather challenges Wilson’s right
to recover under the statute.  The
availability of attorneys’ fees under a particular statute is a question of law
for the court.  Holland v. Wal-Mart Stores,
Inc., 1 S.W.3d 91, 94 (Tex. 1999); Bollner
v. Plastics Solutions of Tex., Inc.
270 S.W.3d 157, 171 (Tex. App.—El Paso 2008, no pet.).  To preserve an issue of law, the appellant must raise the issue through one of
the following:  (1) a motion for directed
verdict, (2) a motion for judgment notwithstanding the verdict, (3) an
objection to the submission of the question to the jury, (4) a motion to
disregard the jury’s answer to a vital fact question, or (5) a motion for new
trial.  See Cecil v. Smith, 804 S.W.2d 509, 510–11 (Tex. 1991);
Martin v. Martin, 326 S.W.3d 741, 746–47
(Tex. App.—Texarkana 2010, pet. denied).

            The issue of
whether attorneys’ fees are recoverable under the UDJA in this instance was not
preserved by any of the foregoing methods. 
Although Berg filed a motion for new trial, the motion did not address
the issue of whether attorneys’ fees are recoverable under the UDJA in this
case.[22]  Berg also filed objections to the plaintiff’s
proposed judgment, in which he complained of the award of attorneys’ fees based
on the breach of contract claim.  No
objection or complaint was made in the trial court regarding the propriety of
the award of attorneys’ fees under the UDJA. 
Because Berg did not preserve error to appeal the issue of whether
attorneys’ fees were recoverable under the UDJA, this point of appeal is
overruled.[23]

            We
agree with Berg’s contention that, to the extent attorneys’ fees were awarded
on Wilson’s breach of contract claim, such award was improper.  We review the trial court’s decision to award
attorneys’ fees de novo.  G.R.A.V.I.T.Y. Enters., Inc. v. Reece Supply Co., 177 S.W.3d
537 (Tex. App.—Dallas 2005, no pet.).

            In
her second amended original petition, Wilson prayed for the recovery of
attorneys’ fees “because this is a claim on an oral or written contract within
the meaning of the Texas Civil Practices [sic] and Remedies Code.  As a result of Berg’s breach, Wilson has been
required to retain the services of counsel to prosecute this action as well as
for any appeal therefrom.”  Wilson did
not seek damages independent of attorneys’ fees, and the jury assessed only
attorneys’ fees.

            Chapter 38
of the Texas Civil Practice and Remedies Code allows recovery of attorneys’
fees in breach of contract cases in addition to the amount of a valid
claim.  Tex.
Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2008).  In order to
recover fees, a party must (1) prevail on the breach of contract claim, and (2)
recover damages.  MBM Fin. Corp. v. Woodlands Operating Co., 292 S.W.3d 660, 666 (Tex. 2009); Mustang Pipeline Co., 134 S.W.3d at 201; Green Int’l, Inc. v. Solis,
951 S.W.2d 384, 390 (Tex. 1997).  The
requirement of damages is implied from the statute’s language, “in addition to
the amount of a valid claim,” the claimant must recover some amount on that
claim.  MBM Fin. Corp., 292 S.W.3d at 666.

            Wilson
acknowledges the common theme of this line of cases—a breach without harm or damage
will not support attorneys’ fees under Section 38.001, but claims this case can
be distinguished because the actual damage was her attorneys’ fees.  In support of this proposition, Wilson argues
that the damage resulting from the breach of contract is the continuation of
the litigation and the resulting attorneys’ fees she incurred.  She claims that the loss resulting here
mirrors the damage elements in contract settings.  Here, Wilson claims that, because she was
forced to continue the litigation with resulting, necessary expenses, those
fees are an element of contractual damages, and are thus recoverable under
Section 38.001.  While this argument is
creative and highly logical, it is not supported by Texas statutory or
caselaw.  Because Wilson did not recover
actual damages, she was not entitled to recover attorneys’ fees on her breach
of contract claim.

            Wilson’s
second amended original petition alleges entitlement to attorneys’ fees under
both the UDJA and Chapter 38 of the Texas Civil Practice and Remedies
Code.  Neither the jury verdict, nor the
final judgment awarding attorneys’ fees, segregates the fees to the various
causes of action.  Generally, a party
seeking attorneys’ fees must show that the fees were incurred on a claim that
allows recovery of such fees and must segregate fees incurred among different
claims or separate parties.  See
Stewart Title Guar. Co. v. Aiello,
941 S.W.2d 68, 73 (Tex. 1997); Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10 (Tex. 1991), modified on other grounds by Tony Gullo
Motors I, L.P. v. Chapa, 212 S.W.3d 299, 313–14 (Tex. 2006).  When, however, the claims are “dependent upon
the same set of facts or circumstances and thus are ‘intertwined to the point
of being inseparable,’ the party suing for attorneys’ fees may recover the
entire amount covering all claims.”  Sterling, 822 S.W.2d at 11 (citing Gill
Sav. Ass’n v. Chair King, Inc.,
783 S.W.2d 674, 680 (Tex. App.—Houston [14th Dist.] 1989), aff’d in part & modified in part on other grounds, 797 S.W.2d
31 (Tex. 1990)).

            In this
case, the fees were undoubtedly based on the same set of facts and are thus
“intertwined to the point of being inseparable.”  Plus, there was no effort to separate them.

            We affirm
the judgment of the trial court.

 

 

            

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          September
28, 2011

Date Decided:             November
2, 2011











[1]Tex. R. Civ. P. 11.

 





[2]The land is
variously referred to as eighty-seven acres and eighty-nine acres; only one
tract seems intended.  Due to Berg’s poor
credit history, he was unable to obtain a loan to buy the property.  Consequently, Wilson obtained the loan in her
name and purchased the property for $389,000.00.  A down payment of $100,000.00 was made on the
property from proceeds of the jewelry business. 
The deed to the property is in Wilson’s name only. 

 





[3]The settlement
agreement, as dictated into the record, provides:

 

1. 
On or before 30 days after today or as soon thereafter as the bank has
made the loan that’s contemplated in paragraph three below, Kristi Wilson will
surrender the following items of personalty to Bob Berg by placing them in an
open area protected from weather and other hazards at 3872 County Road 3504,
and those items are as follows:

 

·        
all personal items belonging to Bob Berg as of
January, 2006;

·        
all business inventory of the business Bob Berg
Designs;

·        
the copier;

·        
a horse called Doc;

·        
the white cargo trailer and its contents, which
shall include everything that was in the trailer at the last time Bob Berg was
there, for example, booths, belts, inventory, clothes, et cetera;

·        
the aluminum horse trailer;

·        
mirror in the house;

·        
an orange tractor believed to be a Kabota [sic];

·        
a Bombay desk;

·        
an old laptop computer if it can be found;

·        
a plasma television, 52 inches wide or approximately
that wide; 

·        
all booths for showing merchandise, except the
screw together booths which Kristi Wilson 

will keep; 

 

2. 
Bob Berg will pick all of those items up by noon that day, weather
permitting.  After that hour, Kristi
shall have no responsibility for any of it. 
When he picks the personal property up, Wilson will leave the white 1999
Ford F-350 pickup at the same place, at the same time, and in substantially the
same condition it was when he got it a month or six weeks ago. 

 

3. 
No later than 30 days from today, Kevin Buchanan (attorney for Berg)
will notify me (Bruce Monning, attorney for Wilson) of the date and time and
give me at least between five and ten days in which to do it, that he would
like for the longhorn cattle that are in my possession and owned by the parties
or subject to this controversy to be delivered at a place of Mr. Buchanan’s
selection.  

 

4. 
No later than 30 days after today or at the same time if a real estate
closing is required in order for Ms. Wilson to raise the money, Ms. Wilson will
pay $25,000 cash to or for – to Bob Berg or for his account.  If it is necessary to use a bank loan to
raise that money, that money will be paid by the title company to Mr. Berg or
at his direction.

 

5. 
At the same time as the closing, or if it is not necessary for Wilson to
get a loan, Berg will execute a Special Warranty Deed to waive any and all
interest he has in the 89 acres that was described on Plaintiff’s Exhibit 6
earlier today to Ms. Wilson, and he will cause the lis pendens notice that’s
been issued in this case to be removed.  

                At
this point in the proceeding, Buchanan pointed out that “the loan that may be
necessary that is contemplated by the Rule 11 Agreement will be no more than
$25,000.”  Monning responded simply with
a “yes.”

 

6. 
Bob Berg, Martha Hayward, and Kristi Wilson agree to fully, completely,
mutually releasing [sic] all claims that any of them has or may have against
any other.  

 

7. 
Kristi Wilson and Bob Berg will not have any direct communications
between them by telephone, fax, email, or in person or otherwise.  This does not mean that the parties can have
no communication with Martha Haywood.  

 

8. 
Bob Berg shall own the business Bob Berg Designs under any by that name
[sic] including all cash, merchandise, inventory, work in progress, accounts
receivable, copy rights [sic], and any deviation [sic] of the name of Bob
Berg.  Kristi Wilson relinquishes all
claims she has to any of the Bob Berg designs or Bob Berg associated business.    

 

9. 
Kristi Wilson shall own the property described in Plaintiff’s Exhibit 6,
which is also 3872 County Road 3504, and everything in it or on it except the
items of personal property listed in paragraph one above. 

 

10. 
All claims asserted by all parties will be dismissed with prejudice to
refiling by any party.  Each party denies
any and all liability for any of the claims but agrees to this settlement only
by peace and to avoid the cost of further litigation.  

 

11. 
Kristi Wilson represents that she has turned over or will turn over all
business inventory where they’re in her possession, custody or control.  

 





[4]Berg’s
counterclaim also alleged fraud, breach of contract, breach of fiduciary duty,
conversion, theft (Texas Theft Liability Act), and sought a constructive trust
on certain real property.  

 





[5]Allegations of
breach were based on Berg’s refusal to accept the $25,000.00 payment tendered
by Wilson and further based on his refusal to execute a special warranty deed
to the certain real property, as contemplated by the agreement.  

 





[6]Wilson did not
request damages, other than her attorneys’ fees.

 





[7]In addition,
the judgment declared void the notice of lis pendens filed by Berg on or about
June 27, 2008, in Hopkins County (eighty-seven-acre property titled in Wilson’s
name).  

 





[8]Wilson’s
traditional motion for summary judgment alleges the existence of the Rule 11
agreement and recites that, subsequent to the execution of that agreement, Berg
filed an amended counterclaim urging new causes of action against her and
further asserting a breach of the agreement. 
Wilson claims the causes of action alleged by Berg (fraud, constructive
trust, conversion, civil claim of theft) were released pursuant to the Rule 11
agreement.  Wilson’s motion interprets
Berg’s amended counterclaim as a withdrawal of consent to the Rule 11
agreement.  Wilson moved the court to
enforce the settlement agreement, because she alleged it met the requirements
of Rule 11.  See W. Beach Marina, Ltd. v. Erdeljac, 94 S.W.3d 248, 255 (Tex.
App.—Austin 2002, no pet.).  Wilson
further moved the court to bar Berg’s counterclaims based on her affirmative
defenses of accord, satisfaction, release, and estoppel, and submitted
affidavits to show her alleged compliance with the terms of the agreement.  Wilson prayed that Berg take nothing on his
counterclaims because her summary judgment evidence established accord, satisfaction,
and release.  In his response, Berg
defensively asserted the existence of fact issues regarding Wilson’s alleged
repudiation of the agreement, and submitted affidavits in support of this
allegation.  The partial summary judgment
entered by the trial court found the existence of fact issues with respect to
breach of the Rule 11 agreement by “the parties.”

 





[9]Berg further
complains that the trial court erred in granting the partial summary judgment,
because that judgment foreclosed his counterclaims.  The court granted a partial summary judgment
finding only that the parties had entered into a valid, legal, and binding
agreement.  The agreement was reduced to
writing and was dictated into the court’s record by the respective attorneys
for each party.  Both parties approved
the settlement agreement as dictated into the record.  An agreement to settle a case is enforceable
by the trial court if it complies with Rule 11 of the Texas Rules of Civil
Procedure.  See Padilla v. La France, 907 S.W.2d 454, 460 (Tex. 1995).  To comply with Rule 11, the agreement must be
either (1) in writing, signed, and filed with the papers as part of the record,
or (2) made in open court and entered of record.  Tex. R.
Civ. P. 11; Padilla,
907 S.W.2d at 459.  Thus, a settlement
agreement between the parties is a valid and enforceable agreement, even though
it is not in writing, where the agreement is made in open court and agreed to
by the parties.  E. Tex. Salt Water Disposal Co. v. Hughes, No. 12-04-00333-CV, 2006
WL 300410 (Tex. App.—Tyler Feb. 8, 2006, pet. denied) (mem. op.).  Moreover, settlement agreements are governed
by contract law.  Alcantar v. Okla. Nat’l Bank, 47 S.W.3d 815, 819 (Tex. App.—Fort
Worth 2001, no pet.).  As such, a
settlement agreement must define its essential terms with sufficient detail to
allow a court to determine the obligations of the parties.  Sadeghi
v. Gang, 270 S.W.3d 773, 776 (Tex. App.—Dallas 2008, no pet.).

                Here,
the parties’ actions of dictating their agreement into the record in open court
complied with the procedural format of Rule 11 of the Texas Rules of Civil
Procedure.  Neither party contends the
essential terms of the Rule 11 agreement are not sufficiently definite.  Thus, the trial court’s finding that the Rule
11 agreement was valid (as preceded by its findings that the parties entered
into the agreement, which disposed of all claims and disputes between them,
that the agreement was dictated into the record, and that the agreement was
approved by the court) appears only to mean that the agreement indeed complied
with Rule 11.  The agreement was binding
because its terms were sufficiently definite to permit enforcement.  Wilson, therefore, contends that the trial
court’s finding that the agreement was “valid, legal and binding” means nothing
more than it complied with the terms of Rule 11 and was sufficiently definite
to enforce.  We agree.  The partial summary judgment did not resolve
or attempt to “rule” on Berg’s counterclaims.

 





[10]None of these
cases adopt a procedure which would omit a judicial determination of a
contested claim of material breach of a settlement agreement in favor of
proceeding directly to trial on the settled claim(s).  

 





[11]To constitute
repudiation, a party to a contract must absolutely and unconditionally refuse
to perform the contract without just excuse. 
Bans Props., L.L.C. v. Housing
Auth. of Odessa, 327 S.W.3d 310, 315 (Tex. App.—Eastland 2010, no
pet.).  A party claiming anticipatory
breach of a contract must establish the following three elements:  (1) a party to a contract has absolutely
repudiated the obligation; (2) without just excuse; and (3) the other party is
damaged as a result.  Pollack v. Pollack, 39 S.W.2d 853, 855
(Tex. Comm’n App. 1931, holding approved); Hauglum
v. Durst, 769 S.W.2d 646, 651 (Tex. App.—Corpus Christi 1989, no
writ).  The record here does not indicate
repudiation of the settlement agreement by either party.  

 





[12]In context,
this is the acknowledgment:

 

Mr. Buchanan
[attorney for Berg]:  We did not comply
with the Rule 11 Agreement in a sense that once she tendered the money to us,
then we didn’t accept it, and we didn’t tender ours.  So, what - - I have an affirmative defense
plead which is offset in rescission - -                                                             essentially rescission. 

 

THE COURT:      Let’s say you get that issue, let’s say it’s found to be true,
where does that leave you?

 

Mr. Buchanan:    Election of remedies.  I think the way the charge gets set up, it’s an
election of remedies.  I get to ask the
jury a question as to was there a material breach.  Both parties ask that question.  I get to ask the question as to whether or
not I am excused . . . from performance. 
Then we’re both going to ask questions about what our damages are.   

 

Mr. Rogers:           There it is.

 

Mr. Buchanan:  We’re
both - - the reason why we’re asking those is because if I win the    rescission issue then I get - - I’m the
winner.  I get to elect which way we’re
going.  Either I can collect my money damages
with the offset from them for whatever money damages they have, or I can elect rescission,
and we go back to square one. 

 

 





[13]The underlying
claims asserted by Berg as counterclaims included fraud, breach of fiduciary
duty, conversion, civil theft, and constructive trust.  

 





[14]Rule 174(b) of
the Texas Rules of Civil Procedure authorizes bifurcated trials.  “The court in furtherance of convenience or
to avoid prejudice may order a separate trial of any claim, cross-claim, or of
any number of claims, counterclaims, third-party claims, or issues.”  Tex.
R. Civ. P. 174(b).  We do not
know, from this record, what the trial court would have done if the jury had
come back with a verdict favoring Berg, for example, whether it might have
continued into a second part of trial on the underlying issues.  See
Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 30 (Tex. 1994).





[15]Berg also
claims the trial court erred in summarily finding the Rule 11 agreement was
“valid, legal and binding” because such relief was neither prayed for nor
sought in Wilson’s motion for summary judgment. 
Wilson’s summary judgment motion asked the court to bar Berg’s
counterclaims based on her affirmative defenses of accord and satisfaction,
release, and estoppel.  The prayer asks
that the court render judgment (1) that defendants take nothing on the claims
asserted on defendant’s first amended counterclaim and (2) that Wilson recover
costs from defendants, attorneys’ fees, together with such other and further
relief to which defendants may be entitled. 
Wilson did not specifically ask the trial court to find the agreement to
be “valid, legal and binding.”  Under
Rule 166a(c), Texas Rules of Civil Procedure, a motion for summary judgment
must “state the specific grounds therefor,” and the trial court is to render
judgment if “the moving party is entitled to judgment as a matter of law on the
issues expressly set out in the motion or in an answer or any other response.”  Tex. R.
Civ. P. 166a(c).  Here, Wilson’s
summary judgment asserted that a Rule 11 agreement existed between the parties
settling all matters.  In addition,
Wilson alleged, in great detail, her compliance with that agreement.  Wilson’s request that the trial court
determine the affirmative defenses of accord and satisfaction, release, and
estoppel were predicated on her
compliance with the Rule 11 agreement.  The
finding of a valid Rule 11 agreement is implicit in Wilson’s request that the
trial court bar Berg’s counterclaims based on her compliance with the terms of
that agreement.  The issue of the
validity of the Rule 11 agreement was the predicate on which the requested
relief was based.  By definition, the
motion included a request for such relief. 
This appears to be a case where the trial court did not grant more
relief than requested.  Rather, in only
finding the Rule 11 agreement valid, legal, and binding, the trial court
granted less relief than requested.





[16]The questions
submitted here were submitted in the precise manner competing claims for breach
are to be submitted under the PJC. 
Questions 1 and 2 read as follows:

 

Did Bob Berg fail to comply with
the Rule 11 Settlement Agreement? 
(Question number 2 is the same, but asks if Kristi Wilson failed to
comply with the Rule 11 Settlement Agreement). 
Both questions were accompanied by the following instructions:

 

1.             A
failure to comply with an agreement must be material.  The circumstances to consider in determining
whether a failure to comply is material include:

 

                (a)  the extent to which the injured party will be
deprived of the benefit which he reasonably expected;

 

                (b)  the extent to which the injured party can be
adequately compensated for the part of that benefit of which he will be
deprived;

 

                (c)  the extent to which the party failing to
perform or to offer to perform will suffer forfeiture;

                

                (d)  the likelihood that the party failing to
perform or to offer to perform will cure his failure, taking into account the
circumstances including any reasonable assurances;

 

                (e)  the extent to which the behavior of the party
failing to perform or to offer to perform comports with standards of good faith
and fair dealing;

 

                (f)  the extent to which it reasonably appears to
the injured party that the delay may prevent or hinder the injured party in
making reasonable substitute arrangements;

 

2. 
Compliance with an agreement must occur within a reasonable time under
the circumstances, unless the parties agreed that the compliance must occur
within a specified time and the parties intended compliance within such time to
be an essential part of the agreement.

 

3. 
In determining whether the parties intended time of compliance to be an
essential part of the agreement, you may consider the nature and purpose of the
agreement and the facts and circumstances surrounding its making.

 





[17]Berg further
alleged Wilson’s claim was barred by the affirmative defenses of waiver,
justification, modification, offset, ratification, estoppel, fraud, and unclean
hands.  

 





[18]Berg’s third amended
answer does not separately assert the affirmative defense of excuse based on
repudiation.   Berg’s counterclaim
alleges a separate breach of contract claim, together with an alternative claim
of repudiation.  

 





[19]Berg’s
counterclaim for breach of contract states that Wilson materially breached the
settlement agreement by:

 

(1) failing to
timely tender the $25,000.00 payment required by the Settlement Agreement, (2) failing
to turn over all inventory to BOB BERG, (3) failing to deliver inventory
conveyed to BOB BERG under the terms of the Settlement Agreement, (4) failing
to deliver personal items conveyed to BOB BERG under the terms of the
Settlement Agreement, (5) converting to her own use inventory conveyed to BOB
BERG under the terms of the Settlement Agreement and/or (6) using
copyrights and intellectual property belonging to Bob Berg Designs conveyed to
BOB BERG under the terms of the Settlement Agreement.

 

Berg’s claim of anticipatory repudiation indicates:

 

In addition and/or in the
alternative, WILSON’S actions, as described above, [actions purporting to show
a breach of contract] including, but not limited to, her failure to tender
payment of the $25,000.00 in a timely manner despite repeated requests, her
refusal to deliver inventory of Bob Berg Designs, and her use of copyrighted
intellectual property belonging to BOB BERG and Bob Berg Designs, constituted a
refusal or inability to comply with the Rule 11 Settlement Agreement.  The acts or omissions of WILSON constituted
an unequivocal expression of her inability or refusal to comply with the Rule
11 Settlement Agreement such that BOB BERG is justified in accepting this expression
as a final anticipatory breach or repudiation of the Rule 11 Settlement
Agreement and he is relieved of any further obligations under the Rule 11
Settlement Agreement.  BOB BERG seeks
rescission of the Rule 11 Settlement Agreement. 





[20]The lis
pendens at issue was filed in the district clerk’s office of Hopkins County,
Texas.  Section 12.007 of the Texas
Property Code provides that a notice of lis pendens is to be filed with the
county clerk of each county where a part of the property is located.  Tex.
Prop. Code Ann. § 12.007(a) (West Supp. 2010).  Wilson thus contends the lis pendens is
void in any event.  See Khraish v. Hamel, 762
S.W.2d 906 (Tex. App.—Dallas 1988, writ denied) (lis pendens filed in
wrong county was void for failure to comply with statute).





[21]The scope of
the UDJA includes, 

 

A person interested under a deed,
will, written contract, or other writings constituting a contract or whose
rights, status, or other legal relations are affected by a statute, municipal
ordinance, contract, or franchise may have determined any question of
construction or validity arising under the instrument, statute, ordinance,
contract, or franchise and obtain a declaration of rights, status, or other
legal relations thereunder.

 

 Tex. Civ. Prac. & Rem. Code Ann. §
37.004(a) (West 2008).





[22]The motion for
new trial claimed a lack of evidence to support the jury’s answers to the
breach of contract issues and further complained of the trial court’s refusal
to submit defendant’s requested jury question on excuse based on breach and/or
repudiation.  

 





[23]At oral
argument, counsel for Berg conceded that this is not a trespass to try title
action.