**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00478-CV**

_____

**CLIPPER BULK SHIPPING, LTD., Appellant**

**V.**

**SUN COAST RESOURCES, INC., Appellee**

**On Appeal from the 136th District Court**
**Jefferson County, Texas**
**Trial Cause No. D-189,774**

**MEMORANDUM OPINION**

Sun Coast Resources, Inc. sued Clipper Bulk Shipping, Ltd. for breach of a contract involving a purchase of "Marine Gasoil" (MGO). Clipper's counterclaim included claims for breach of contract and breach of warranty. The trial court granted a directed verdict in favor of Sun Coast on its claim against Clipper. The jury returned a verdict against Clipper on a revocation of acceptance issue, and determined the amount of Sun Coast's damages.

1

The jury also found Sun Coast breached the agreement with Clipper, and awarded Clipper damages. The trial court signed a judgment based on the jury verdict. Clipper appealed.[1]

BACKGROUND

Sun Coast, a fuel distributor, agreed to sell 100 metric tons of MGO to Clipper for the chartered vessel M/V Chios Voyager. The invoice price was in excess of $67,000. The flashpoint of the MGO had to be at least 60° Celsius (140° Fahrenheit). Sun Coast delivered the MGO to the Chios Voyager at the Port of Beaumont. Samples were reserved from the MGO delivery. The delivery receipt, or "bunker receipt," indicated the MGO's flashpoint was 60° Celsius/150° Fahrenheit. The Chios Voyager left the Port of Beaumont. No testing of the MGO was done prior to the ship's departure.

Dennis Hansen, Clipper's senior operations manager, testified that six or seven days after the ship sailed, he received a notification from the ship owners that they had tested a sample of the MGO and discovered a problem with the flashpoint. Hansen notified Sun Coast by email. He invited Sun Coast to test its own sample which, like the ship owners' sample, had been taken from the MGO

---

[1]Sun Coast filed a cross-appeal but did not present any separate issues. The cross-appeal has been abandoned to the extent it sought greater relief than that provided by the trial court.

delivered to the ship. Sun Coast set up a test in Houston. The test took approximately one hour. Test results showed that the MGO had a flashpoint of 58° Celsius.

Clipper informed Sun Coast that Clipper needed to "debunker" the MGO because of its failure to meet specifications. Sun Coast first asked about debunkering at sea, but then asked if the ship could return to Houston for debunkering. Hansen testified "[t]here was no way" that the ship could have made it back to Houston or Beaumont "without consuming these off-spec bunkers." Clipper "debunkered" the ship in Trinidad, sold the MGO for $17,940, and refused to pay Sun Coast any amount for the MGO. The jury also heard that Clipper did not test the new fuel it took on in Trinidad.

Deniese Huggins, Sun Coast's chief financial officer, testified it was not common for Sun Coast to test MGO purchased from a refinery, and Lorie Mitchell, Sun Coast's sales representative, similarly testified that Sun Coast does not test to make sure the MGO meets the specifications. Huggins indicated that Sun Coast relies on the bill of lading, a certification or proof that the refiner is providing what Sun Coast requests.

Clipper did not ask for the MGO to be tested in port. Hansen testified to the obligations regarding testing that Clipper had under the contract with the owners of

3

the vessel. The contract was before the jury, as was Hansen's interpretation of the contract. Hansen indicated that five samples of the MGO were to be taken when the ship took delivery of the MGO---one given to the charterer's representative, two kept on board the vessel, and one given to the supplier. The fifth sample had to be sent to a reputable lab for analysis. He testified this was Clipper's obligation, and Clipper did not fulfill it.

Mitchell believed that it was reasonable for Clipper to rely on the bunker receipt and the representations made by Sun Coast regarding the specifications. Captain Stefan Wozniak, a "master of ocean-going vessels," explained that the industry practice is for bunkers not to be tested until after the ship has left port and that it is reasonable to do so. Wozniak testified that it "would be preferable if the industry practice was to test bunkers before a ship left[,]" but "[t]hat is not what we do." Hansen indicated that he does not see the necessity of testing the MGO while the ship is in port if there is no "red flag" raised on a bunker delivery receipt.

Hansen agreed that Clipper is under a duty to comply with the requirements of the Clipper/owner contract, and Clipper did not comply. He further indicated that the contract between Clipper and the vessel owners places the burden of sampling and testing the bunkers on Clipper.

REVOCATION OF ACCEPTANCE

Clipper argues the evidence is legally insufficient to support a finding that Clipper was not entitled to revoke its acceptance of the MGO. In a legal sufficiency review, an appellate court credits evidence favorable to the judgment if a reasonable fact-finder could, disregards contrary evidence unless a reasonable fact-finder could not, and reverses the fact-finder's determination only if the evidence presented in the trial court would not enable a reasonable and fair-minded fact-finder to reach the finding under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). Legal sufficiency challenges are sustained where the record discloses that: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is not more than a mere scintilla; or (4) the evidence established conclusively the opposite of a vital fact. *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011). More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). A jury may reasonably accept or reasonably reject any or all of the testimony from any witness. *Keller*, 168 S.W.3d at 819.

Clipper asserts that in view of the failure of the MGO to meet specifications, Clipper had the right to revoke its acceptance of the product. The jury was instructed in Jury Question No. 1 (an instruction Clipper does not challenge) as follows:

> Clipper Bulk Shipping, Ltd. was "entitled to revoke acceptance" only if (1) the difference in the flash point substantially impaired the value of the Marine Gas Oil to Clipper . . . , and (2) its acceptance of the goods was reasonably induced by either the difficulty of discovery of the flash point or by the seller's assurances.

*See* Tex. Bus. & Com. Code Ann. § 2.608 (West 2009). The jury heard testimony from Mitchell and Wozniak that the test took only one hour -- evidence that there was little difficulty in discovery of the flashpoint. The jury also heard testimony that Clipper had a duty to sample and test under its contract with the ship's owners, and that Clipper did not fulfill its duty. Under the circumstances, the jury could reasonably reject the testimony of witnesses who believed it reasonable to rely on the delivery receipt without testing. There was more than a scintilla of evidence that Clipper waited an unreasonable amount of time before inspecting the MGO. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983) (A legal sufficiency challenge will be sustained when the evidence offered to prove a vital fact is more than a scintilla.). Given the testimony regarding Clipper's duty to test the sample, its failure to do so, and the short amount of time required to test a

6

sample, a reasonable fact-finder could conclude that Clipper's failure to test timely was unreasonable, and that Clipper's acceptance of the MGO was not "reasonably" induced by either the difficulty of discovery of the flashpoint or by the seller's assurances. We overrule issue one.

DAMAGES

Clipper argues the evidence was not factually sufficient to support the jury's answers to Jury Questions No. 3 and No. 8 concerning damages. In a factual sufficiency challenge, the reviewing court considers and weighs all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

The jury awarded Sun Coast $67,817.96 for economic damages that resulted from Clipper's failure to pay the submitted invoice. The evidence established Clipper did not pay any amount on the invoice. Clipper argues nevertheless that it should have been given an offset for the $17,940 received for the off-spec bunkers sold while the ship was at sea. Clipper's offset argument is premised upon its claim that it had a right to revoke acceptance, which the jury found it did not have. Hansen testified that Clipper deducted the $17,940 from its cross-claim for breach

of contract against Sun Coast, but that is not payment on the invoice. The evidence is factually sufficient to support the jury's damages finding in Question 3.

The jury awarded Clipper $7,000 on its cross-claim for damages for Sun Coast's failure to deliver the MGO according to specifications. Clipper argues that the jury award seems to reflect the approximate difference between the invoice value of the fuel which Clipper obtained from Sun Coast and Clipper's estimate of its own damages. Clipper contends the calculation is wrong.

While Clipper claimed to have reduced its damages by an amount representing the value of the fuel it retained and sold, the jury was not required to accept that testimony or to believe that the amount was reasonable. The jury was not required to accept Clipper's calculations on any part of its damage claim, and could reject all or part of the testimony concerning damages as not credible. Mitchell testified that, had Clipper tested the sample of MGO in port, the MGO could have been debunkered in Beaumont and sold at the same price as Sun Coast sold it to Clipper. She explained that the fuel could have been off-loaded and used for other specified purposes; there was no evidence to the contrary. The fact that Clipper may have sold Sun Coast's product at below market value does not mean Clipper acted reasonably in doing so. Considering Clipper's burden of proof and the jury's role in assessing the credibility of the witnesses, we are not convinced

8

that the amount of the jury's damage award represents an error requiring reversal of the judgment and a new trial. *See* Tex. R. App. P. 44.1. Issue two is overruled.

JURY CHARGE

In its final issue, Clipper argues the trial court erred in denying Clipper's request to submit the breach of warranty claim to the jury. The standard of review for jury charge error is abuse of discretion. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990) (op. on reh'g). We may not reverse for charge error unless the error is harmful. *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 749-50 (Tex. 1980); *see also Shupe v. Lingafelter*, 192 S.W.3d 577, 579-80 (Tex. 2006) (Trial court's refusal to submit instruction on negligent entrustment was harmless where the jury failed to find negligence in response to the jury question on negligence generally; by answering the negligence question, the jury provided answer to negligent entrustment.).

Submitting the controlling issues to the jury in a logical, simple, clear, fair, correct, and complete manner is the goal of the jury charge. *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999). A "controlling issue" is an issue that requires a factual determination to render judgment in the case. *Smooth Solutions Ltd. P'ship v. Light Age, Inc.*, No. 04-08-00093-CV, 2009 WL 1804846, at \*\*3-4 (Tex. App.—San Antonio June 24, 2009, no pet.). The trial judge must submit to

9

the jury the controlling questions, instructions, and definitions raised by the pleadings and supported by the evidence. *See Triplex Commc'ns v. Riley*, 900 S.W.2d 716, 718 (Tex. 1995); *see also* Tex. R. Civ. P. 278. The trial court has broad discretion to fashion the jury charge, so long as it is legally correct. *Hyundai Motor*, 995 S.W.2d at 664.

In connection with Clipper's proposed liability and damages questions, the trial court refused to submit instructions on the meaning of "[f]ailing to comply with an express warranty" and a list of the elements of damages for breach of warranty. The questions submitted to the jury regarding Sun Coast's liability and damages, and the jury's answers are as follows:

> Question No. 7
> Did Sun Coast Resources, Inc. fail to deliver to the M/V Chios Voyager Marine Gas Oil with a specification of a minimal flashpoint above 60 degrees Celsius?
>
> Answer: Yes.
> . . . .
> Question No. 8
> What sum of money, if any, paid now in cash would fairly and reasonably compensate Clipper Bulk Shipping, Ltd. for damages, if any, that resulted from [Sun Coast's] failure to comply with the agreement found in Question 7?
> . . . .
> Answer: $7,000.

The liability and damages questions proposed by Clipper and refused by the trial court are as follows:

10

Was the failure of plaintiff to comply with a warranty, if any, to provide marine gas oil with a minimum flash point of 60° Celsius cause defendant to sustain damages[?]

What sum of money, if any, now paid in cash would fairly and reasonably compensate defendant for its damages, if any, sustained as a result of [Sun Coast's] failure to comply with its warranty?

Breach of contract and breach of warranty are distinct causes of action with separate remedies. *Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 60 (Tex. 2008) (citing Tex. Bus. & Com. Code Ann. §§ 2.711, 2.714)). A claim can sometimes be subsumed within the other in the jury charge context; it depends on the pleadings, evidence, and charge in the case. *Smooth Solutions*, 2009 WL 1804846, at *4. The liability question submitted by the trial court regarding Sun Coast targeted the specific conduct claimed by Clipper to constitute a breach of warranty.

Section 2.714(a) of the Business and Commerce Code provides that where the buyer has accepted goods and given notification of breach, he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach, "as determined in any manner which is reasonable." Tex. Bus. & Com. Code Ann. § 2.714(a) (West 2009); *see also* Tex. Bus. & Com. Code Ann. § 2.715 (West 2009) (incidental and consequential damages). The jury considered Clipper's damages claim, which included incidental

11

and consequential damages. In awarding damages, the jury ascertained Clipper's damages from Sun Coast's failure to supply a product with a proper flashpoint. We conclude any error in the charge does not require a new trial. *See* Tex. R. App. P. 44.1(a). Issue three is overruled. The judgment is affirmed.

     AFFIRMED.


                              _____
                                 DAVID GAULTNEY
                                     Justice

Submitted on June 26, 2013
Opinion Delivered October 17, 2013

Before McKeithen, C.J., Gaultney and Horton, JJ.